# INGA WASS v. BRACKER CONSTRUCTION COMPANY AND ANOTHER.[1]

December 24, 1931.

No. 28,585.

[1]Reported in 240 N. W. 464.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for relator.
*Ernest E. Watson* and *J. M. Sweitzer,* for respondent employer
and Employers Mutual Liability Company, its insurer.

STONE, J.

Certiorari to the industrial commission to review an order deny-
ing a petition for workman's compensation.

Petitioner, Inga Wass, is the widow of Carl J. Wass. Respondent
Bracker Construction Company is a general building contractor,
and respondent Employers Mutual Liability Company its insurer.
The Bracker company will be referred to as though it were the
only respondent. In 1929 it built for the city of Minneapolis the
Patrick Henry school building. As it was nearing completion re-
spondent employed Wass to clean the windows, agreeing to pay
him for the job $125. The cleaning was done by washing in the
usual manner, save that wood alcohol was used to some extent. The
required material of that kind was paid for by respondent and
charged to Wass. The latter furnished his own buckets and the
cloths or chamois skins used in the work. Other workmen were
still engaged about the building finishing the general construction
work and the installation of accessories. It had not been turned
over to or accepted by the city.

Only by inference from the general nature of the work and other
circumstances can it be determined whether respondent in fact had
any right of control. Wass was accustomed to take such jobs and
to do all the work himself. He had cleaned the brick work of the
building under another contract of the same kind, that is, for a
lump sum. In that job he may have employed an assistant. But
he did all the window cleaning himself. It was a one-man job. One
man working the usual number of hours per day should have com-
pleted it in not to exceed ten days.

While at work December 17, 1929, Wass accidentally fell from a window and received fatal injuries.

■ The case has gone so far and has been presented here on the theory that the only thing preventing allowance of compensation is that Wass was an independent contractor. If only a question of fact is presented the decision of the industrial commission is controlling. But here we have a case which in our judgment presents a question of law and nothing more. The facts are not in dispute or doubt.

The evidence is not explicit one way or the other as to any reserved right of control in respondent. It is the existence in the employer of the right of control that makes the workman an employe. If it does so exist, its nonexercise cannot convert the employe into an independent contractor. Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10395. Without presuming to take judicial notice of the manner in which such work is done, we are yet not willing to confess enough judicial ignorance to believe that respondent did not have a substantial right of control over Wass in the simple matter of washing the windows of a building of which respondent was in charge and for which it was responsible. Its superintendent of construction was still on the job daily. His duty was to keep the whole work going, to see that there was the utmost expedition and compliance with specifications. Probably he could not properly interfere with any such technical work as the installation of electric wires and lighting fixtures. But there is nothing intricate, technical, or professional about washing widows. Whether he did or not, respondent's superintendent certainly could have told Wass where to begin or to stop work at a given place and go to some other in the building to carry on.

So we think there appears in this record as matter of law sufficient right of control, the menial character of the work considered, to have constituted Wass an employe and servant rather than an independent contractor. However such simple tasks are to be paid for, it should be presumed until the contrary appears that they are

done in the usual manner. Where simple, manual, and unskilled labor is done on the premises of the employer, under his very nose, so to speak, he usually has a broad if not a complete right of control. No special circumstances appear here to show the contrary. So we conclude as matter of law that the petition should have been granted.

■ The contract was oral, and, Wass being dead, its precise terms not shown. Possibly too much stress was put upon its form and not enough consideration given to its purpose and subject matter by the industrial commission. True, G. S. 1923 (1 Mason, 1927) § 4290 (1)· expressly removes from the operation of the law "an owner who lets a contract to a contractor in good faith" and any "contractor, who, in good faith, lets to a subcontractor a portion of his contract." Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49. But by immediate context the exceptions created by the section are expressly so restricted as not to include pieceworkers or any case "where the system of employment used merely provides a method of fixing the workman's wages," earned by rendering "a service for hire." § 4326 (d). So we must look beyond mere forms and determine whether the injured person was at the time of his injury a workman or employe. We must find him to be such if, whatever the form of his contract, it was a mere "method of fixing" the wages of a servant. The intention is plain that the mere form put on the transaction by the parties should be disregarded and its real substance made controlling. An employe entitled to compensation cannot contract away that right. A contract in this case, assuming Wass to have been an employe, that in case of injury he should not get compensation, of course would be void as against public policy.

Long ago and at common law, when there was no such broad social purpose to be served as that of the workmen's compensation act to provide compensation for all mere servants or workmen in the employments covered, it was frequently held that the "humble industrial status" of a workman, the simple, menial character of his work, might compel the conclusion that the employer retained

the right to control the manner of doing the work. "In other words, it was considered that, although the persons employed might be exercising an independent calling in the sense that they held themselves out as being prepared to do certain kinds of work for such parties as might engage them, the relation which they bore to those parties, during the progress of such work as might be undertaken by them, was in law that of a servant." Anno. 65 L. R. A. 495. See also 20 A. L. R. 745.

"Generally speaking, an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished." 16 Am. & Eng. Enc. of Law (2 ed.) 187; Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004.

But, as the text above cited goes on to say, "the word 'result' is used in this connection in the sense of a production or product of some sort, and not of a service." So while one may contract to produce a finished product, such as a structure of some kind, and thereby become an independent contractor, it does not follow that if he agrees to perform a mere service, especially a menial one, such as mowing a lawn or washing windows, any form of contract can properly classify him as an independent contractor. Such menial tasks "do not result in a product. They are simply a service." Jensen v. Barbour, 15 Mont. 582, 593, 39 P. 906; Pyle v. Miracle Concrete Corp. 126 Wash. 384, 218 P. 246. In Rait v. New England F. & C. Co. 66 Minn. 76, 68 N. W. 729, this court came near to holding that a carpenter removing ice from a roof preparatory to repairing it was performing a service so menial that as matter of law he could not be considered an independent contractor. That the standard concept of independent contractors does not include workmen performing menial tasks has been decided, in effect, in many cases.

Whatever criticism may be made of such authorities, as interpretations of common law, all ground for disapproval disappears when it comes to apply their reasoning under the workmen's compensa-

tion act. That requires compensation whenever in the affected trades one "employs another to perform a service for hire," G. S. 1923 (1 Mason, 1927) § 4326(d), and "the system of employment used merely provides a method of fixing the workman's wages," § 4290(1). Under that law Wass was not performing an independent contract but rendering a mere service. Hence he was a workman or employe, and the right of compensation attached as matter of law.

In argument we have been referred to the fact that there are general and independent contractors whose business it is to clean windows, particularly those of our modern office and public buildings. Doubtless they are independent contractors. That is because they really take over the whole job, have the exclusive power of direction, and become responsible for the finished result. They hire the workmen and make a profit from their labor. In such a case there is an independent contract in the true sense. The owner of the building is not liable for compensation simply because he is not the employer. But the contractor is liable, and from him an injured workman will get his compensation. The plain purpose of the law will be accomplished and not thwarted, as it would be by a denial of compensation in this case. The petition should have been granted, and the case must be remanded to the industrial commission with instructions accordingly. Its only remaining duty is to determine the rate and amount of compensation. Petitioner is allowed an attorney's fee of $100.

So ordered.

DIBELL, J. (concurring).

I concur in the result.

WILSON, C. J. (dissenting).

Certainly the findings of the industrial commission to the effect that decedent was an independent contractor cannot be disturbed upon the theory that they are without support in the evidence or that reasonable minds might not reach the same result. It seems that we have held that the determination of the right of control

is a matter of fact, or at least we have so treated it. Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421. The facts however are practically undisputed, and it may be that the conclusion to be drawn therefrom is one of law; and from that standpoint I express my views.

Decedent in the solicitation of work used a business card as follows:

"Carl J. Wass

"Specialize in cleaning

"and tuck pointing

"No Destructive                                           3317 43rd Ave. So.

"Chemicals used. ·                                        Minneapolis, Minn."

He specialized in "cleaning" and tuck pointing. "Cleaning" what? The record shows that he cleaned brick work and windows. I take it that when buildings are completed and the bricks in the wall or the windows in the completed building are daubed with paint and dirt or other substances, this man's occupation was that of "cleaning" such soiled bricks and windows. I take it that "tuck pointing" is a kindred work.

In the instant case the contractor let to Mr. Wass the contract to clean the bricks in the Patrick Henry school building, and paid him the lump sum of $325. After receiving bids, the contract to clean the windows in this same school building was let to Mr. Wass at the agreed price of $125. All the contractor was entitled to under the contract was results. Mr. Wass had the right to use such material and ingredients as best suited him. The contractor could not dictate or direct what cleaning powder or mixture should be used or how long it should dry before being removed.

I am of the opinion that Mr. Wass' work involved skill, technique, and even an element of professionalism. The contractor reserved no express right of control. I see no grounds or circumstances from which it may be said that an inference may be drawn that he had the right of control. I recognize it is the right of control and not the failure to exercise such right that is important. · But the con-

tractor gave no orders. Defendant did not assume to direct when and where the work was to commence. Wass supervised his own work. He had no boss. He chose his own hours. The contractor had no right to stop his work before it was finished. Mr. Wass had been engaged in his special line of work for many years and indeed had frequently worked for this particular contractor over a period of eight or ten years. He was never on the payroll. All his work was by the job and in line with his special work and usually on large buildings.

Three of these jobs were exclusively window cleaning—the contractor did not always have to clean the windows. Mr. Wass employed his own help when needed.

The superintendent of construction representing the contractor testified that it was his duty to see that the work about the building was coördinated with other work being done. This is referred to in the opinion as the basis for the holding that the right of control existed by inference. But the superintendent never said a word to Mr. Wass about his work. Indeed, the superintendent stated that besides Mr. Wass there were, at the time of the accident and while Mr. Wass was engaged in his work, electricians, carpenters, and common laborers engaged in and about the building. The superintendent testified in referring to these workers: "I did not have charge over these people, you understand." Mr. Wass' work required that he follow the painters. Their work undoubtedly in a large measure made Mr. Wass' work necessary. The substance of his contract required that he should be the last man on the work, and the mere fact that the superintendent might have the right to insist that Mr. Wass' work be done after the painters had finished and not before has nothing to do with the element of control as to how the work should be performed. That relates merely to the element of time when the building is ready for the work.

As I read the opinion the controlling element seems to be the alleged menial character of Mr. Wass' work. But it does not seem to me that this work was in fact menial. Menial servants are those "who live within the master's walls." Menial services would seem-

ingly be the services of such servants or at least services of the character that such servants usually perform. Possibly the cleaning of such windows as falls to such servants would be menial; yet the work in itself is not degrading, abject, or necessarily of any more humble rank than the work of many other employments. To undertake to wash windows at a cost of $125 in a large school building or to clean the bricks in a building like the St. Cloud Veterans Hospital, as decedent did, to my mind involves an undertaking not embraced in the term "menial." I think Mr. Wass had a respectable business.

Mr. Wass was apparently ambitious, and rightfully so. His efforts were commendable. As I view the record, he was in business for himself. There is no claim that the contract was a subterfuge to destroy the responsibility of an employer or to take away the rights of an employe. Each party acted in good faith and as he wished. It was his right. Mr. Wass had so conducted his business for years. This method of operation was his choice. His long continuation of the method is persuasive that it must have satisfied him that it was better than working as an employe. I consider it unfair to an employer to have the worker an independent contractor while he prospers but an employe when adversity comes.

I cannot follow the argument that there is a presumption that the worker was an employe. That relation rests on contract. There can be no presumption as to what the contract was. The burden is upon the petitioner to prove the terms of the contract in order to support her claim. I am of the opinion that Mr. Wass was an independent contractor and that the decision of the industrial commission should be affirmed. Schoewe v. Winona P. & G. Co. 155 Minn. 4, 191 N. W. 1009; Ledoux v. Joncas, 163 Minn. 498, 204 N. W. 635; Moore v. Kileen & Gillis, 171 Minn. 15, 213 N. W. 49; Stucky v. Independent Sch. Dist. 175 Minn. 547, 221 N. W. 911; Holmberg v. Amundson, 177 Minn. 55, 224 N. W. 458, 225 N. W. 439; Zarns v. Swanville S. S. Assn. 177 Minn. 462, 225 N. W. 448.

I thought we had heretofore established quite a definite rule by which to determine whether one doing work is an employe or an

independent contractor. Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004. The foregoing opinion now establishes a new or additional way or method to distinguish between an employe and an independent contractor, to-wit: meniality in services involved. In other words, the new rule is the character of the services, while the old one involved the right of control. I regard the result as illogical, unsupported by principle, and one which will be confusing in practice.

If the question is determined by the character of the services, i. e. their meniality, I consider it one of fact, and the conclusion of the industrial commission, under the rule, should not be disturbed by us. Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635.

LORING, J. (dissenting).

I agree with the Chief Justice.

