# ANTOINETTE CARTER v. W. J. DYER & BRO. AND ANOTHER.[1]

July 1, 1932.

No. 28,861.

[1]Reported in 243 N. W. 436.

414

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for relators.
*Drill & Drill,* for respondent.

OLSEN, J.

Certiorari to review a decision of the industrial commission awarding compensation to Antoinette Carter for the death of her husband.

The decedent, William F. Carter, while washing windows of a building owned and occupied by W. J. Dyer & Bro. accidentally fell from a window in an upper story of the building and was killed on March 12, 1931. The referee of the industrial commission found that at the time of the accident decedent was in the employ of W. J. Dyer & Bro. and earning wages at the rate or sum of $30 per week; that the injury causing his death was accidental and arose out of and in the course of his said employment, and awarded compensation. On appeal to the industrial commission the findings and award made by the referee were approved and adopted as the findings and award of the commission.

The relators here, W. J. Dyer & Bro. and Anchor Casualty Company, challenge the findings of fact and award of compensation principally on the ground of insufficiency of the evidence to sustain the finding that the decedent was an employe of W. J. Dyer & Bro. within the meaning of the compensation law at the time of his injury and death. Their contention is that the evidence conclusively shows that decedent was an independent contractor and not an employe. If from the evidence and the inferences reasonably to be

drawn therefrom the industrial commission could reasonably find that decedent was an employe within the meaning of the workmen's compensation law and not an independent contractor, then that settles the question. On the other hand, if from the evidence and the inferences reasonably drawn therefrom the only conclusion reasonably to be arrived at is that the decedent was an independent contractor and not an employe as defined by the compensation law, then the commission was in error in its findings and award.

■ Window washing is humble work, performed mostly by hand labor. It is usually done by servants, janitors, or cleaners hired by the owner or occupant of the building. It may be a part of the services for which a janitor or servant is regularly hired, or it may be the only service for which a person is hired. It may be paid for by being included in the monthly or weekly wages of a servant, or it may be paid for by the day, hour, or so much per window, or so much for a building.

A brief statement of facts seems necessary. For some years, up to about 18 months before the accident, the decedent was in the employ of a corporation engaged in the window washing business in the city of St. Paul. He worked as a window washer. There can be no doubt that while so engaged he was the servant and employe of the corporation for whom he worked. He then commenced to work for others in the same occupation, and, as far as appears, to work in the same manner as before, except that thereafter he hired out to the owners and occupants of buildings who had window washing to be done. There was a change of employers but no change in the occupation or in the manner of doing the work. Windows are not generally washed every day, but at more or less regular intervals; and, except in very large buildings, a window washer could not be steadily employed in one building. In order to occupy his time decedent sought and obtained employment to wash the windows in a number of buildings. He made a list of his employers, and at the time of his death had some 23 or 24 different customers or employers for whom he washed windows at stated times or whenever called. He had no place of business but ar-

ranged for a place where he could be called by telephone. He provided himself with the necessary ladder and utensils for doing the work. In most cases his compensation was paid at the rate of a fixed price per window. In one or more cases his work included some cleaning of offices and he was paid by the month. He sometimes employed a helper, and had such a helper with him at the time of the accident. There were and are a number of corporations, companies, and individuals engaged in the business of window washing in the city of St. Paul, and decedent was in competition with them in his work.

W. J. Dyer & Bro. were in the business of buying and selling musical instruments, radios, and things incident thereto. For some 18 months prior to his death decedent had been employed by them to wash the windows of their building whenever needed. There was no stated time for doing the work. Whenever called or informed that it was needed, the windows were washed. The washing was done on an average of once every two or three months, sometimes oftener. Decedent was paid 10 cents a window for the smaller windows and 20 cents a window for the larger ones for each washing. The contract of hiring, except as to the price, was not very definite. There was no time fixed. Either party could terminate the contract at will. If the work was not satisfactory the employer could require decedent to do it over or discharge him. Decedent was not on the pay roll of Dyer & Bro. but was paid after each washing. Window washing, as so carried on, did not require much supervision by the employer. Decedent knew how to do the work. He was given access to the rooms in the building and did the work. Taking into consideration the nature of the work, the manner in which it was performed, and the contract of employment here shown, the industrial commission could reasonably find that decedent was an employe and not an independent contractor.

One of the tests is whether the employer has the right to control. Nothing appears in the evidence to deprive the employer here of full control over the work. As far as appears, it could determine when the work was to be done and the manner in which it should be

done. As far as appears, it had the same right of control over the decedent as it would have had over any other of its servants. doing the same work, and it had the right to discharge.

In State ex rel. V. & R. L. Co. v. District Court, 128 Minn. 43, 150 N. W. 211, it is held that the test of whether a person is an employe is the right of control, and that, unless it appears conclusively that the right to control and supervise the work was not reserved, the question of whether the relation of employer and employe exists is a question of fact. While these rules there stated are taken from the cited negligence cases, they are there applied to the case under the workmen's compensation law.

Later cases are Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134; Schullo v. Village of Nashwauk, 166 Minn. 186, 207 N. W. 621; Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004; Lampi v. Koponen, 178 Minn. 133, 226 N. W. 475; Reigel v. J. B. Finch T. Co. Inc. 182 Minn. 289, 234 N. W. 452; Barker v. Bemidji W. P. Co. 184 Minn. 366, 238 N. W. 692.

The fact that decedent provided his own ladder and small equipment and that he at times employed a helper is not of particular importance. Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313.

It is stated, but not much argued, that decedent's employment was casual and not in the usual course of the business of the employer. But for the fact that there was a continuing contract or employment for some 18 months, the employment might well be termed casual. However, we have no difficulty in holding that the washing of windows in employers' places of business, just as much as sweeping floors and keeping their places of business neat and attractive for trade, is work in the usual course of their business. To be excluded from compensation under the compensation law on this ground the employment must be both casual and not in the usual course of the business of the employers. O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636.

The late case of Wass v. Bracker Const. Co. 185 Minn. 70, 240 N. W. 464, sustains recovery in the present case.

The fact that after his death Mrs. Carter sold to decedent's helper the ladder and small utensils used in window washing and included decedent's list of customers or employers and any assumed good will, all for the sum of $175, is not of particular importance.

The fact that decedent was in competition with other persons and parties doing the same kind of work did not make him an independent contractor. A servant or workman is generally in competition with others seeking employment in the same line of work.

The findings and order of the industrial commission awarding compensation are affirmed.

WILSON, C. J. (dissenting).

The owner or tenant who wishes windows washed can always stop the work, necessarily he decides when he wishes the work done. The window washer could not get work if his work were unsatisfactory. Hence, if not satisfactory, he does it over. If the demand is unreasonable he quits. That is his right. But it does not seem to me that that is the element of control which we have meant in our decisions. I thought it meant control in the manner in which work is to be done, methods applied, materials and substances used, means by which application is made, and the type of equipment or safety appliances to be used. No one ever heard of an office man or the owner or a tenant of a building undertaking to tell a professional window washer how he should wash windows. The man having such work done is interested in results only. Indeed, he wants no responsibility in the matter.