SAM A. WILSON v. THOS. KILEEN & SON AND ANOTHER.[1]

January 27, 1933.

No. 29,247.

*Orr, Stark, Kidder & Freeman* and *F. A. Duxbury,* for relators.
*Theodore Hollister* and *Lathers & Hoag,* for respondent.

HILTON, Justice.

Certiorari on the relation of the employer and its insurer to review an order of the industrial commission awarding compensation to Sam A. Wilson, employe, at the rate of $5.77 per week and for certain hospital and medical expenses paid or incurred. The correctness of the award as to amount is not questioned.

Wilson sustained a permanent partial disability as the result of freezing on February 9, 1931, at about ten o'clock p. m. while caring for a flock of sheep. He was knocked down and rendered unconscious by one or more vicious buck sheep. The injuries incurred resulted in the loss of his left hand and wrist and left foot and ankle. The sheep were the property of Thos. Kileen & Son, copartners. The questions involved are: (1) Did a contract of employment exist between Wilson and the Kileen firm on the date named; (2) was the latter, under the facts appearing in the record, bound by the provisions of part II of the workmen's compensation act on the day of the accident.

On January 27, 1930, Wilson and his brother, H. B. Wilson, entered into a farm contract—upon shares—with the Kileen firm, providing for a four years' leasing of improved farm land situate in Wilkin county, Minnesota, owned by the latter. The exact terms of this contract are not here important. On the next day Wilson and his brother purchased live stock, hay, grain, tools, machinery, and other equipment for the agreed price of $10,638 from the Kileen firm. The purchase price was evidenced by promissory notes payable at various times. Thereafter the Wilsons moved onto the place, taking with them certain of their previously owned live stock. Among that live stock were 150 breeding ewes, three bucks, and considerably over 100 spring lambs, which were practically all owned by Sam Wilson. All the business and matters here involved

were transacted for the Kileen firm by Thomas Kileen, hereinafter referred to as Kileen.

The Wilsons were unable to make promised payments, and on June 14, 1930, Kileen purchased from Wilson the 150 breeding ewes and the three bucks for the agreed price of $1,800, which was credited upon the indebtedness to the Kileen firm. That fall Wilson sold all of his lambs and went entirely out of the sheep business. He and his brother dissolved partnership, and the latter moved away.

At the time of the purchase of the sheep by Kileen a written agreement between the parties was entered into in which appears the following:                                                            .

"It is further agreed between Thos. Kileen and Son and S. A. Wilson that Thos. Kileen & Son will pay to S. A. Wilson $25.00 per month for caring for said sheep and their increase, also sale of increase and wool, said sheep to be pastured on Thos. Kileen's land and to be brought to the home farm for winter care, and to be fed during the winter on Thos. Kileen & Son's share of the home farm crop. The said $25.00 per month or $300.00 per year is to be paid by giving S. A. Wilson credit on his notes held by Thos. Kileen & Son."

Kileen owned 280 acres of other land in the vicinity of the leased farm which, after being fenced, was used as a pasture. In this pasture the sheep were kept during the summer and fall, and later on, by Kileen's orders, were taken to the home farm and placed in a five-acre pasture and kept during the winter of 1930-1931. In accordance with the terms of the contract, Wilson did all the work incident to the care of said sheep, feeding them with grain and hay owned by Kileen. At the time of the lambing season of 1931, by direction of Kileen, Wilson was carefully watching the ewes and as necessary was taking into a sheltered place those about to drop lambs. While so engaged the accident occurred.

It appeared in the evidence that Kileen was frequently on the place looking after his interests and that he told Wilson how to

feed the sheep and how to care for them and gave orders in that regard every time he came to the place. He also had given instructions, after purchasing the sheep, as to when they were to be bred. The care to be given the sheep by Wilson was to continue as long as they stayed on the place; there was no definite length of time fixed. The arrangement was subject to termination upon the sale or other disposition by Kileen of the sheep.

Under the evidence the majority of the commission were justified in reaching the conclusion that the relationship of employer and employe existed; that Wilson was not an independent contractor; and that the relationship of bailor and bailee did not exist. One member of the commission was of the opinion that the latter relationship did exist. Kileen & Son retained the right of control over the sheep, and that right was actually exercised. The nature of the services rendered was personal, and practically all of it was done by Wilson himself. Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; Wass v. Bracker Constr. Co. 185 Minn. 70, 240 N. W. 464; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10395.

■ Part 2 of the workmen's compensation law, G. S. 1923 (1 Mason, 1927) § 4268, et seq. does not apply to farm labor unless the employer shall have elected to accept its provisions by posting a written or printed statement of his election and filing a duplicate thereof with the commission as provided by § 11 of the act. Section 11 [§ 4271] provides:

"All contracts of employment * * * shall be presumed to have been made with reference, and subject to the provisions of part 2, unless otherwise expressly stated in the contract in writing, and a copy of such contract or the portion of the contract containing such provision shall be filed with the Industrial Commission."

It is further provided:

"Every employer and every employe is presumed to have accepted and come under part 2 hereof, unless prior to the accident, he shall have signified his election not to accept or be bound by the provisions of part 2."

The manner of such election is to be by the posting and keeping posted in a conspicuous place in his shop or other place of business, as the industrial commission may order, a written or printed notice of his election not to be bound by the act and filing a duplicate thereof with the industrial commission.

The necessary requirements for coming within the protection of the farmer portion of the act were complied with by Thos. Kileen & Son. They filed with the commission a notice of election to be bound by part 2 of the act and posted a notice thereof on the outside of the granary on the farm. It was later taken down (because of its exposure to the elements) and tacked up in the milk room in the cow barn, and at times was brushed off and replaced, finally disappearing. When Wilson went on the place he saw and read the notice and also saw it during part of the period following June 14, 1930. Kileen told Wilson that he had insurance for the protection of his men. The notice as filed with the commission is still there. The election by the employer to be bound by the act was in force at the time of the accident, and Wilson was protected thereby. In so far as the care of the sheep was concerned, the employer was engaged in the farming business and the employe was a farm laborer at a monthly compensation. On the record the employer was insured for workmen's compensation liability with relator and was so insured on the day of the accident.

Affirmed.