# EMMA A. FULLER v. NORTHERN STATES POWER COMPANY AND ANOTHER.[1]

May 19, 1933.

No. 29,391.

*Briggs, Weyl & Briggs,* for relators.

*Frank J. Zima* and *Sexton, Mordaunt, Kennedy & Carroll,* for respondent.

*HOLT, Justice.*

Certiorari to review the decision of the industrial commission awarding respondent compensation on account of her husband's accidental death arising out of and in the course of his employment.

George F. Fuller, respondent's husband, lived at Glenwood, Minnesota. His regular work was that of car inspector for a railroad company. During his spare time he occasionally did some work for relator painting and cleaning boilers and smokestacks. Relator owns and operates plants producing and distributing electric power; also plants producing for distribution steam heat in certain cities and villages, one being located at Glenwood. For nearly every year since 1921 decedent had been employed to clean and oil the inside of the smokestack of relator's plant there and to paint it

[1]Reported in 248 N. W. 756.

outside; also to paint the boilers. He could do this work at his convenience when the steam-producing plant was not operated, that is, between June 1 and September 15. Relator's superintendent, Mr. Hakes, had charge of the plant at Glenwood and attended to the painting and cleaning of the smokestack and boilers. In 1929 Mr. Fuller did this work, the working order specifying that $30 was for painting the smokestack, $5 for putting rope in pulley, and $15 for removing soot and oiling the inside of the stack. It appears that when the decedent was employed to do this painting in the summer of 1930 a work slip was made out and sent to the St. Cloud office of relator for authority, and a copy given decedent. Mr. Fuller being dead, Mr. Hakes, who engaged Mr. Fuller, could not testify as to the conversation. So we have only this work slip upon which $50 was indicated. Relator supplied the paint, the oil, brushes, ladders and all instrumentalities needed in the work. On June 25, 1930, Mr. Fuller attempted to pull a cable attached to a rope through a pulley at the top of the stack. The rope and cable parted, and the cable he held, falling against a wire carrying a deadly current of electricity, killed Mr. Fuller almost instantly.

The referee found that on June 25, 1930, George F. Fuller was an employe of relator and was receiving as wages the sum of $50 per week, and that while so employed he suffered an accidental injury arising out of and in the course of the employment, resulting in death. It appeared that ordinarily it took Mr. Fuller about a week to do the work. Compensation was awarded. The industrial commission adopted the findings of the referee and affirmed the award. The particular finding challenged by the assignments of error is the one that decedent was an employe of relator when his accidental death occurred. The claim is that the evidence is conclusive that he was an independent contractor. Painting the smokestack was a casual piece of work, but it was a necessary part of relator's business. Scraping and oiling it on the inside and painting it yearly on the outside was as necessary to a proper conduct of the business relator was engaged in as the cleaning of the windows in the case of Carter v. W. J. Dyer & Bro. 186 Minn. 413, 243

N. W. 436. Therefore. Mr. Fuller was not excluded from the workmen's compensation act as one "whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession or occupation of" relator. 1 Mason Minn. St. 1927, § 4268. And see also in that connection Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421, and our previous decisions on that subject therein cited. The real question is whether the evidence required a finding that Mr. Fuller was not an employe but an independent contractor. In passing on the question, the purpose of the act, to afford a workman and his dependents protection against the accidental injuries which may befall him in his employment, must be kept in mind and the intention of the legislature to place the burden of so doing upon the industry or business in which he is employed. The act itself, 1 Mason Minn. St. 1927, § 4290, foresaw that there might be means adopted to deprive the workman of the benefits intended. There is and can be no claim that relator in this employment sought to evade liability under the act. But there is language in the section referred to which indicates that the conclusion ought not to be too readily arrived at that the ordinary workman who does manual labor by the "piece" rather than by the day or hour is an independent contractor. That part of § 4290 reads:

"But this section shall not be construed to cover or mean an owner who lets a contract to a contractor in good faith nor a contractor, who, in good faith, lets to a subcontractor a portion of his contract. Provided, however, that no person shall be deemed a contractor or subcontractor, so as to make him liable to pay compensation within the meaning of this section, who performs his work upon the employer's premises and with the employer's tools or appliances and under the employer's directions; nor one who does what is commonly known as 'piece work' or in any way where the system of employment used merely provides a method of fixing the workman's wages."

Mr. Fuller could hardly be termed a contractor or subcontractor within the purview of this section. The inference is that he per-

sonally was to do the work. The work was to be done on the premises of relator with its materials, tools, and appliances. Fuller was to do the manual labor of scraping off the soot and rust and applying the paint and oil furnished by relator. Fuller was not to furnish any material, tools, or appliance whatever in the job. The clause "and under the employer's directions" the commission could infer was of no significance here, since from previous performances of this work both Fuller and relator's superintendent understood that no directions were needed. It is also to be assumed from surrounding circumstances that there was no binding contract so that Fuller could have recovered damages if relator had concluded not to have the work done after the employment was effected. Again, the commission could conclude that this was "piece work," or a method of fixing his wages. Both employe and employer from past experience knew about what time it would take to do the work. They knew that it could only be done at odd times when Fuller was away from his regular employment. While Fuller could spread paint on a smokestack, he was not a paint contractor having a shop, using his own brushes, paints, tools, and appliances. This could also be taken into consideration in the determination of the fact whether he was an employe or an independent contractor.

There is no way in which this case can be distinguished from that of Wass v. Bracker Const. Co. 185 Minn. 70, 240 N. W. 464. There, notwithstanding the conclusive effect accorded the findings of fact of the commission, its finding that Wass was an independent contractor was held not supported by the evidence. It appears that this record presents more persuasive evidence to sustain the finding that Fuller was an employe of relator and not its independent contractor at the time he met death than did the record in the Wass case that Wass held that status toward the party constructing the building upon which he worked when killed. The commission in the instant case no doubt endeavored to follow and apply the decision in the Wass case, 185 Minn. 70, 240 N. W. 464. The fact that Fuller's son helped his father, by snubbing the rope which held the boatswain's chair, when Fuller was working upon parts of the stack

not accessible by means of the ladders, does not necessarily prove that the father was an independent contractor. Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313. Relator cites Petzold v. McGregor, 92 Ind. App. 528, 176 N. E. 640; Litts v. Risley Lbr. Co. 224 N. Y. 321, 120 N. E. 730, 19 A. L. R. 1147; Village of Weyauwega v. Industrial Comm. 180 Wis. 168, 192 N. W. 452. That these decisions are in point and support relator's contention that Fuller was an independent contractor must be conceded. But the facts in none of them are as like the case at bar as those present in the Wass case, 185 Minn. 70, 240 N. W. 464, where, after full consideration, this court gave more consideration to the fact that the employment was that of an ordinary manual laborer expected to do the work himself. If that decision is to stand, we should not follow those of other jurisdictions not in harmony therewith. It should also be remarked that the statutes of the three states whose courts rendered the decisions referred to have no provisions like those contained in § 4290 of our code above quoted. In the Petzold case, 92 Ind. App. 528, 176 N. E. 640, it appears that the painter, who made claim for compensation under the compensation act for an accidental injury while painting one of the dwellings Petzold, a building contractor, was constructing, was to furnish the tools and brushes required and could employ assistants to be paid by him out of the price he was to receive. In the case at bar Fuller personally was to do the work, and relator was to furnish not only the paint but all the brushes and tools or appliances needed. The situation in the Litts case, 224 N. Y. 321, 120 N. E. 730, 19 A. L. R. 1147, was the same as in that of Petzold. In the Village of Weyauwega case, 180 Wis. 168, 192 N. W. 452, the painting of a bridge was let to Kramer for $75. Bids had been called for and Kramer's was accepted, though not the lowest. Kramer could do the work himself or hire others to do it. The village was to furnish the paint and Kramer the brushes and tools. It was held that Kramer was an independent contractor notwithstanding a finding to the contrary. Mr. Justice Crownhart's dissent is forceful. In view of our decision in Wass v. Bracker Const. Co. 185 Minn. 70, 240 N. W.

464, and Carter v. W. J. Dyer & Bro. 186 Minn. 413, 243 N. W. 436, we must permit the finding and award of the industrial commission to stand.

The writ is discharged and decision awarding compensation is affirmed, with $100 attorneys' fees to be taxed as costs in favor of respondent.

*OLSEN, Justice,* took no part.

*WILSON, Chief Justice* (dissenting).

Until recently we had a very satisfactory, workable rule by which to determine whether one doing certain work was an employe or an independent contractor. This rule was and is recognized by most courts. It is based upon the definition of an independent contractor as expressed in the case of Angell v. White Eagle O. & R. Co. 169 Minn. 183, 187, 210 N. W. 1004, 1006, in this language:

"One who undertakes to do a specific piece of work for another without submitting himself to the other's control in the details of the work, or one who renders the service in the course of an independent employment, representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished."

It was also said in the case of Nesseth v. Skelly Oil Co. 176 Minn. 373, 374, 223 N. W. 608:

"There can no longer be any doubt but what the real test as to whether a person is an independent contractor or an employe is whether the asserted employer, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner and means in which and by which the details of work are to be performed."

Mr. Commissioner Lees in Lynch v. Hutchinson Produce Co. 169 Minn. 329, 330, 211 N. W. 313, recognizing the rule in the Angell case, 169 Minn. 183, 210 N. W. 1004, and other of our opinions, said:

"It is unnecessary to restate the tests for the determination of the question. They are familiar to the industrial commission and

to the bar. * * * Where * * * the facts are not in dispute, the industrial commission has properly treated the question as one of law."

This general rule, which has been recognized as far as I can learn by all the courts except this one, is stated in Zeitlow v. Smock, 65 Ind. App. 643, 652, 117 N. E. 665, 668:

"While some other tests indicated in these decisions may have had more or less influence in particular cases, in determining whether the relation between the employer and the injured party was that of master and servant, employer and employe, or that of contractor and contractee, the test which seems to be recognized as controlling in all such cases, is the right of control over the means, methods and manner of performing the work; that is to say, if the employer retains such right he thereby creates the relation of employer and employe. If, on the other hand, the person employed is permitted to choose for himself the method and manner of doing the work and is permitted to select the persons to do it, free from the control of his employer in all matters connected with the doing of said work, except as to the product or result of the work, such person is an independent contractor."

It occurs to me that we departed from this rule in Wass v. Bracker Const. Co. 185 Minn. 70, 240 N. W. 464, wherein it was announced that the menial character of the service rendered was a deciding factor. That holding, as it seems to me, left us without any fixed rule. The Wass case was followed by Carter v. W. J. Dyer & Bro. 186 Minn. 413, 243 N. W. 436; but the opinion is silent on the menial character of the service involved, though it was as much or more menial than in the Wass case, 185 Minn. 70, 240 N. W. 464. In this case my associates are again broadening an already indefinite and uncertain rule by now inferentially, if not directly, holding that the fact that the service is manual is to govern. Of course we will find much service to be manual. If this is another controlling element, confusion is added to disorder. I feel that the industrial commission and the bar are left in a state of perplexity.

In this case relator had an unusual job of work to be done. Obviously, but few men could or would undertake it. Relator knew this when it constructed the smokestack. As a part of its construction it had attached the necessary pulley at the top for preliminary use in making repairs. The ownership of the smokestack necessitated also the ownership of the necessary equipment to be used in the maintenance and repair. It is not practical for men who do such work to own their apparatus and equipment when jobs of this character are not numerous and are far apart. In doing this work decedent was similar to a steeple-jack, who goes about the country climbing and repairing the mute emblems of hope extending heavenward from our many churches. This work, like that, involves a peculiar hazard. The owners in need of repairs to such structures necessarily and naturally prefer to have them done with as little responsibility as reasonably possible. They seldom ask regular employes to do such work. They select men, as here, who are not upon their pay-roll. Here the pay-roll on which the employer paid the insurance company a premium did not include the decedent.

Much stated by me in the dissenting opinion in the Wass case, 185 Minn. 70, 240 N. W. 464, is applicable here, and I need not repeat. Mr. Fuller had a definite contract with relator, and, had it breached the same, I know of no reason why he could not have recovered damages. He had the job, and his contract required its completion in order to entitle him to his pay. Such was not the case in Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421.

It is not quite fair to say that Fuller was to do all the work himself. Perhaps it may be inferred that he was to do all the actual painting. Undoubtedly the parties intended that. He had the privilege of furnishing his own help and was to pay for it himself. He could do the job without help. If so, he required about ten days' time in which to complete the work. With one helper he could do the work in one and one-half days. He had painted this smokestack annually for seven or eight years. He had help on substantially each occasion. Whether his son helped or whether one Chris-

tianson helped, as indicated in the record, is not important. Obviously it was to Fuller's advantage to have help. The helper worked on the ground only, manipulated and snubbed the rope with which Fuller was moved from place to place as his painting, cleaning, or oiling progressed. A helper would probably have cost him about $6, leaving him approximately $44 for his one and one-half days' work. This is a circumstance that strongly characterizes his status.

It seems to me that 1 Mason Minn. St. 1927, § 4290, is without application, because, as I construe the record, Fuller was not doing this work "under the employer's directions." I do not think, however, that the application of the statute could be eliminated by saying that directions were unnecessary. They are always unnecessary when the employer has no right to give them. Neither do I agree that the efficiency or ability of a man to paint is an element from which to determine whether he is an employe.

In Litts v. Risley Lbr. Co. 224 N. Y. 321, 120 N. E. 730, 731, 19 A. L. R. 1147, the company agreed to pay a man $50 to paint three smokestacks. The man was to furnish ropes, tackle, scaffolding, and implements. The company agreed to pay for a helper and the paint. It provided a helper who worked on the ground. The rope broke, and the painter was killed. The statute and facts were substantially the same as in this case. This is what the court said [224 N. Y. 324]:

"In the instant case Litts was an independent contractor. He agreed to do a specific piece of work for the company. In doing it he had absolute control of himself and his helper. He was independent as to when, within a reasonable time after the agreement was made between him and the company, and as to where he should commence the work. He was free to proceed in the execution of it entirely in accordance with his own ideas. He was not to any extent subject to the directions of the company in respect of the method, means or procedure in the accomplishment. He was not subject to a discharge by the company because he did the painting in one way rather than in another. Those facts, considered by themselves, would constitute him an independent contractor. In the

relation of employer and employee the employer has control and direction not only of the work or performance and its result, but of its details and method and may discharge the employee disobeying such control and direction. * * * Moreover, the agreement to paint the three stacks for the specified sum of fifty dollars is indicative, though not conclusive, that Litts became an independent contractor.

"The fact that during the progress of the work the company told Litts to do certain acts which were essential to the performance of the agreement, that is, to scrape off and paint well the rusty spots, is not inconsistent with his status or relation as an independent contractor. The relation permitted the company to exercise the degree of control essential to secure the fulfillment of the contract and which did not deprive Litts of the right and opportunity to do the painting in the way he wished. * * *

"The fact that the company furnished the paint and the helper does not conflict with the evidence here that Litts was independent of and uncontrolled by the company in the mode and means of doing the work. Litts was free to apply the paint as he chose. The helper was subject to his orders alone. The power was his throughout the performance of the job to determine and direct the particular manner in which the paint and the appliances should be used and the acts of the helper."

In the Village of Weyauwega v. Industrial Comm. 180 Wis. 168, 192 N. W. 452, the village let the job of cleaning off the dirt and scales of old paint and painting a bridge for $75, the village to furnish the paint and Kramer, the painter, to furnish the brushes. Kramer was to paint the bridge at his own time and convenience. (Fuller had the same privilege.) The sole question involved was whether Kramer was an independent contractor or whether the relation of employer and employe existed. The court there held, first, that where there is no conflict in the evidence the determination of the status of one who claims to have been an employe is a conclusion of law; secondly, the court held that Kramer was not an employe but an independent contractor, and in relation to such holding used this language [180 Wis. 171]:

"We are convinced that the evidence before the *Commission* did not present a question of fact. The terms of the employment were simple and undisputed. Kramer agreed to paint the bridge for $75. He was to do it in his own way and at his own convenience. Under the agreement he was at liberty to do the work himself or hire others to assist him. The village reserved no control over the details of the work. When the bridge was painted Kramer was entitled to $75. He could not have been discharged at the whim or caprice of the village. Did this in law constitute him an independent contractor?

"An independent contractor has been defined as 'one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work.' * * * Also, 'one who undertakes to do specific jobs of work, as an independent business, without submitting himself to control as to the petty details. Carlson v. Stocking, 91 Wis. 432, 65 N. W. 58. Numerous tests have been suggested and applied by the courts to assist in the determination of whether a given status is that of an employee or independent contractor, perhaps the most significant of which is whether the employer has the right to control the details of the work. Madix v. Hochgreve B. Co. 154 Wis. 448, 143 N. W. 189, and authorities there cited. The right to control the details of the work is to be distinguished from such supervision or inspection as may be necessary to secure the ultimate result. Carleton v. Foundry & M. P. Co. 199 Mich. 148, 165 N. W. 816, 19 A. L. R. 1141.

"It is clear from the record that the village reserved no right to control the details of the work. * * * It is not contended that any power was reserved on the part of the committee or the village board to direct the manner in which the dirt should be cleaned off or the scales scratched off, or what part of the bridge should be painted first, or the kind of a brush that should be used, or any other detail that might arise in the prosecution of the work. That was all left to Kramer.

"In Madix v. Hochgreve B. Co. 154 Wis. 448, 143 N. W. 189, it is said: 'Other significant characteristics of an independent con-

tractor are that he is usually engaged in carrying on an independent employment or business, and customarily contracts to do a given piece of work for a specified sum of money and is responsible for the result thereof, while a servant usually works by the hour, day, week, or month, and is not responsible for the result of the work beyond performing his own labor in a workmanlike manner.'

"Here, Kramer undertook to do 'a given piece of work for a specified sum of money.' He was responsible for the result thereof. He was no doubt required to do the job in a good workmanlike manner in order to entitle him to the stipulated compensation. The village could no doubt quarrel with him about the result, but the record is barren of any evidence to indicate that it could interfere with or direct the manner of accomplishing the result."

In Petrow & Giannou v. Shewan, 108 Neb. 466, 187 N. W. 940, 941, it was held that a plumber was an independent contractor, he having contracted to do a particular job of work to put in certain pieces of plumbing fixtures, a sink and a floor drain according to a plan. The plumber was to furnish the labor and necessary materials. The court stated [108 Neb. 468]:

"An independent contractor is generally distinguished as being a workman who is independent in his employment; one who contracts to do a particular piece of work according to his own method, and is not subject to the control of his employer, except as to the results of his work. He is not in such a case a servant of his employer; nor can he be controlled by the employer in the manner of doing the work, except to the extent that the employer has the right to give such directions as may be found necessary to insure compliance with the contract. * * *

"The defendants in this case were not plumbers. They were not contractors nor builders, and did not understand the manner in which plumbing should be done. In no way did they attempt to control, nor did their agreement give them the right to control, the plaintiff as to the methods, means or procedure to be employed. The plaintiff was employed to do the specific work as an entirety. The question of the time which would be consumed in doing the

work was not mentioned; nor was the total cost. The defendants quite evidently gave to him the right to conduct the work as he saw fit, according to his own methods."

It was also there held that where the one having the work done gives such directions as may be found necessary to secure compliance with the contract it is not necessarily inconsistent with the existence of the status of the workman as an independent contractor.

In Gross v. Michigan I. & C. Co. 219 Mich. 200, 189 N. W. 4, the workman furnished his own tools and cut cordwood at a fixed price per cord; he, controlling his own hours for work and the amount of work to be done, was an independent contractor.

In Zeitlow v. Smock, 65 Ind. App. 643, 117 N. E. 665, a farmer was engaged to do hauling at odd times for a contractor when he was not busy on his farm, the contractor telling him when he employed him that he, the contractor, would be away part of the time and he wanted somebody to look after the hauling and take it off his mind. While at work the farmer never saw the contractor on the job but once, and the contractor never gave the farmer any direction or instruction, except that he wanted the goods delivered, and never exercised any control over him, the farmer being paid 65 cents per hour per team. It was held that such farmer was not the contractor's employe but an independent contractor, since the contractor in employing him had not reserved the right to control the manner of doing the work, which is the decisive test as to the relationship. This case is consistent with Herron v. Coolsaet Bros. 158 Minn. 522, 198 N. W. 134, where the right of control was reserved.

In Francis v. Johnson, 127 Iowa, 391, 101 N. W. 878, it was held that where defendant hired a painter to paint his house for a lump sum, giving no directions as to the manner in which any of the work was to be done, the painter was an independent contractor, and defendant was not liable for a fire caused by the painter's negligent operation of a paint burner.

With the utmost respect for the recognized good judgment of those in sympathy with the majority opinion, I feel that reason,

principle, and the great weight of authority lead to a contrary conclusion.

The majority opinion recognizes the fact that the Wass case, 185 Minn. 70, 240 N. W. 464, is leading us afield out of harmony with the courts of other jurisdictions. This I have been and am trying to avoid.

*LORING, Justice* (dissenting).

I agree with the Chief Justice.