### KARAS v. KLEIN et al.

Civ. No. 1172.

District Court, D. Minnesota, Third Division.

March 18, 1947.

Victor E. Anderson, U. S. Atty., and James J. Giblin, Asst. U. S. Atty., both of St. Paul, Minn., for plaintiff.

Allen L. Gray, of St. Paul, Minn., for defendants.

DONOVAN, District Judge.

This proceeding was commenced by petitioner for the purpose of requiring respondents to reinstate him in the position he occupied with them before entering the military service, and to recover losses of wages and benefits, pursuant to the Selective Training and Service Act of 1940, as amended, 56 Stat. 724, 50 U.S.C.Appendix § 308(e), hereinafter, for convenience, referred to as the Act.

Respondents by their answer deny that petitioner was ever employed by them and allege that petitioner was an independent contractor.

At the trial before the court the facts disclosed that petitioner was inducted into the Naval forces of the United States at Fort Snelling, Minnesota, on February 9, 1944, and served therein for the period of one year, eight months and eleven days, following which he received an honorable discharge, on October 19, 1945.

Prior to said induction, and in or about March, 1943, he commenced hauling "rubbish" for respondents and certain other individuals. He furnished his own truck, gasoline and repairs in that connection. The work performed by him for respondents arose out of what petitioner described as "a deal" made with their manager to haul away such rubbish, including discarded wooden crates, boxes and paper cartons, from three of their stores at an agreed price, payable monthly in cash, following which he would execute and deliver a receipt therefor. Respondents furnished brooms, containers and hand trucks for the removal of said material, and at times directed the doing of the work.

Petitioner's sales of material thus picked up became somewhat lucrative. He testified that he averaged $140 per month on the sale of crates, boxes, waste paper and cartons which he obtained among rubbish hauled from respondents' several places of business. His industry resulted in so much work that he hired an assistant at $80 per month. His total earnings as a result of the "deal" amounted to about $400 per month. All of the work performed for respondents by petitioner was done on his own time, and to engage in such business he was required to obtain a license from the City of St. Paul.

Respondents had about two hundred employees in their business, and privileges enjoyed by them as such were not extended to petitioner.

Upon petitioner's return from the military service he applied for reinstatement and learned that respondents had engaged

some one else to haul rubbish for their stores, and with whom they were reluctant to part. They did ask petitioner, however, whether he would consider terms more favorable to them. He refused.

The sole issue here is whether or not petitioner held a position with respondents prior to his induction into the Naval service requiring reinstatement under the Act.

Respondents contend petitioner was:

(a) an independent contractor and hence did not hold a position with them; but assuming petitioner did hold a position within the Act, then

(b) he was guilty of laches in pursuing his remedy; further

(c) he has obtained other employment compensating him in excess of that paid him by respondents; and, in any event

(d) respondents have so changed their positions since petitioner went into service as to make it impossible and unreasonable to restore petitioner to the same status that existed prior to his induction into the Naval forces.

■ Determination of the questions here presented necessitates that the Act "be liberally construed for the benefit of those who left private life to serve their country in its hour of great need". Fishgold v. Sullivan Drydock & Repair Corp. et al., 328 U. S. 275, 66 S.Ct. 1105, 1111.

In Boone v. Lightner et al., 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587, the court said: "The Soldiers' and Sailors' Civil Relief Act [50 U.S.C.A. Appendix, § 501 et seq.] is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation. * * *"

■ Was petitioner an independent contractor to the extent claimed by respondents, or does he come within the beneficent purposes of the Act? Under the facts of the case petitioner, in my opinion, was occupying "a position, other than a temporary position, in the employ" of respondents at the time he was inducted into the Naval forces. That respondents in good faith assumed that he was not an employee in the sense commonly understood is obvious. Everything they did suggests this. He

was not treated by them as an employee. But while this is evidence tending to prove his status to be that of an independent contractor, it is not conclusive. Birmingham v. Bartels et al., 8 Cir., 157 F.2d 295; Walling v. Twyeffort, Inc., 2 Cir., 158 F.2d 944; MacMillan v. Montecito Country Club, Inc., D. C., 65 F.Supp. 240; Lee v. Remington Rand, Inc., D. C., 68 F.Supp. 837; Rait v. New England Furniture & Carpet Co., 66 Minn. 76, 68 N.W. 729; Schullo v. Village of Nashwauk, 166 Minn. 186, 207 N.W. 621; Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N.W.2d 285; Clark v. Housing Authority, Wash., 1946, 171 P.2d 217.

■ The controlling test characterizing the relationship of the parties is clearly stated by Judge Johnsen in Birmingham v. Bartels et al., supra, 157 F.2d at page 300, as follows: "The crux of the common-law distinction between an employer-employee relationship and an independent-contractor status is in the right of the person for whom the services are performed to control the person performing them, 'not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished' (Treasury Regulations, supra), or in other words 'not only to direct what shall be done, but how it shall be done' (New Orleans, M. & C. R. Co. v. Hanning, 15 Wall. 649, 657, 82 U. S. 649, 657, 21 L.Ed. 220). It is not necessary that the employer actually shall direct the manner in which the services are performed, but 'it is sufficient if he has the right to do so.' Treasury Regulations, supra. Cf. Grace v. Magruder, 80 U.S. App.D.C. 53, 148 F.2d 679, 681."

At common law the workman's humble and industrial status had considerable bearing in solving the problem of control. It is difficult to imagine anything more menial and humble than the work of a garbage man. Such menial tasks are simply a service. Wass v. Bracker Construction Co. et al., 185 Minn. 70, 240 N.W. 464; Carter v. W. J. Dyer & Bro. et al., 186 Minn. 413, 243 N.W. 436. Applying the rule of liberal construction as laid down by the controlling cases, I am of the opinion that petitioner at the time he was inducted, qualified as holding "a position", as provided by the Act.

472

■ Was petitioner guilty of laches? Respondents next contend that, assuming the parties were subject to the Act, petitioner did not act with diligence in seeking reinstatement. The evidence discloses that petitioner made proper application for reinstatement within the statutory period, following his discharge from the Navy. Respondents asked him if he would do the work for a price less than that paid him at the time he was inducted. He refused to work for less. Respondents rejected his application. He then sought the advice and assistance of one James F. Kelly, who was in charge of the veterans' division of the Minnesota Selective Service System, who investigated the claim very thoroughly. Petitioner was then sent to the office of the United States Attorney for the District of Minnesota. Suit was commenced against respondents as copartners, individuals, and also against the respondent corporation.

Petitioner is not an educated man. He is a laborer of average intelligence. The record indicates that he was seeking assistance under the Act, and making an earnest effort to effect a settlement before resorting to court action. His delay cannot be said to be culpable. Under the circumstances he was not guilty of laches. Prince et al. v. Sonnesyn et al., Minn. 25 N.W.2d 468.

■ Respondents next argue that petitioner sustained no loss, as he is capable of earning as much or more in his work since reinstatement was denied. The evidence discloses he has been buying and selling boxes and barrels, and has realized some earnings since his discharge from the service. In the present case I think his compensation should be limited to the period of unemployment commencing with the institution of action in this court, for the reason that the delay in enforcing his rights here was in no manner the fault of respondents.

■ The final point urged is based on the claim of respondents that "circumstances have so changed as to make it impossible or unreasonable" to restore petitioner "to such position". Prior to petitioner's induction respondents were copartners. On August 1, 1946, Klein Super-Markets, Inc., a Minnesota corporation, purchased the assets and businesses of the copartners' stores at which petitioner worked before entering the Naval forces. The copartners, named in the order set forth in the title of the pleadings herein, are the president, vice president, secretary and treasurer of the respondent corporation. The individual respondents own all the stock of said corporation. The circumstances have not so changed as to make it impossible or unreasonable to restore petitioner to said position. The change is one of form rather than substance. National Labor Relations Board v. Adel Clay Products Co. et al., 8 Cir., 134 F.2d 342; Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653. The court, in the exercise of its equity powers, may reach all of the respondents and enforce petitioner's rights under the Act.

It should be said in conclusion that the claimed "change in circumstances" by respondents was not made to evade any responsibility that might attach under the Act. Throughout the pleadings and trial respondents and their able counsel have been cooperative and fair.

Counsel for petitioner may submit findings of fact and conclusions of law consistent with the above.

An exception is allowed to respondents.