GEORGE LEDOUX v. J. A. JONCAS AND OTHERS.[1]

June 19, 1925.

No. 24, 666.

**On conflicting evidence finding of fact by Industrial Commission conclusive.**

    1. Upon conflicting evidence the findings of the Industrial Commission on question of fact will not be disturbed.

**Decedent was not an employe.**

    2. Upon the facts stated in the opinion the commission was justified as a matter of law in holding that decedent was not an employe.

    1. See Workmen's Compensation Acts, C. J. p. 123, § 127.
    2. See Workmen's Compensation Acts, C. J. p. 115, § 114.

---

    1. See notes in L. R. A. 1916A, pp. 163, 266; L. R. A. 1917D, 186; 28 R. C. L. pp. 827, 828; 3 R. C. L. Supp. p. 1600; 4 R. C. L. Supp. p. 1872; 5 R. C. L. Supp. p. 1581.

Upon the relation of Beulah Ledoux the supreme court granted its writ of certiorari directed to the Industrial Commission to review its findings dismissing a proceeding by her, as widow of George Ledoux,

[1]Reported in 204 N. W. 635.

employe, and others, against J. A. Joncas, employer, and others. Affirmed.

*Frederick J. Miller*, for relator.

*M. E. & C. A. Ryan, Abbott, MacPherran, Dancer, Gilbert & Doan,* and *Denegre, McDermott, Stearns & Weeks*, for respondents.

WILSON, C. J.

A dam in the Mississippi river at Brainerd holds a large volume of water known as Rice lake. This water has been used extensively for logging operations by the Brainerd Lumber Company having a sawmill and mill pond on the west side of the lake. Other lumber companies drove logs through the lake to points south of Brainerd. Parker-Kellogg Lumber Company purchased from the Brainerd Lumber Company all their sunken logs in Rice lake, and procured from the Rum River Boom Company the right to enter the river and reclaim sunken logs from Little Falls to Cohasset which included Rice lake. J. A. Joncas operated a sawmill on the east bank of Rice lake where the reclaimed logs were manufactured into lumber. Joncas had an arrangement with Parker-Kellogg Lumber Company by which he was to reclaim the logs and saw them into lumber at a stipulated price per thousand feet. The recovery of the logs was effected by one to three men operating on the river on "work floats" or rafts made of cedar logs with boards nailed across on which the men stood to work, and "loading floats" made of a framework of cedar poles with cables between the poles. When a log was raised it was placed on the "loading float" and the buoyancy of the cedar framework held up the reclaimed log. When 15 to 20 logs were loaded it was towed to the mill. In addition to the floats the equipment consisted of a "sacking" boat, rope, poles and anchor.

Joncas made a number of the floats with material owned by Parker-Kellogg Lumber Company and his practice was to let a man take the necessary outfit and operate as he saw fit and Joncas paid the man 50 cents per log at the mill. The operator provided his own help in his own way.

George Ledoux worked for Joncas in the mill. He had two brothers operating jointly on the lake. He left his employment and

worked with his brothers, who later left, and he remained in the reclaiming operations alone under no arrangement between himself and Joncas, who had made the usual arrangement with the brothers. Joncas furnished some rope for the work. He was paid the regular price of 50 cents per log. While the brothers were present some checks were made to decedent and some to Ledoux Brothers and some to one of the other brothers. The last check was given to the widow of decedent. On September 24, 1923, while engaged in his work, Ledoux was drowned. He left a widow and four children who have made claim for compensation. On certiorari the order of the Industrial Commission denying compensation is before us for review.

Where the evidence is conflicting as to an issue of fact and reasonable minds might reach different conclusions after a consideration of the evidence and the inferences which may fairly and reasonably be drawn therefrom, this court will not disturb the findings of the Industrial Commission. Schoewe v. Winona P. & G. Co. 155 Minn. 4, 191 N. W. 1009. It is not for this court to decide the facts. But whether there is any evidence tending to support a given finding, and whether the evidence conclusively establishes a particular fact are questions of law. Benson v. County of Marshall, supra, page 309.

In this case the evidence is so free from conflict as to the controlling facts that it may be said that the question of the decedent being an employe was one of law. Under the method of reclaiming these logs the men were engaged in an enterprise of their own. The only contractual relation between Joncas and the men was that, with certain equipment furnished, they would furnish the necessary additional equipment and reclaim sunken logs and he would pay the specified price per log. None of the respondents ever consented that any of the men become an employe. The decedent had no talk with any of the respondents as to this work. By the most favorable implication, it may be said he assumed with Joncas the same relation that his brothers had with Joncas. The relation of employer and employe is contractual. Arterburn v. County of Redwood, 154 Minn. 338, 191 N. W. 924; Herron v. Coolsaet Bros. 158 Minn. 522,

198 N. W. 134. But in this case this relation cannot be implied from the circumstances. Decedent's arrangement was exclusively with his brothers and respondent Joncas, and the circumstances are persuasive that he stood in the relation of an independent contractor. Rait v. New Eng. F. & C. Co. 66 Minn. 76, 68 N. W. 729; Vosbeck v. Kellogg, 78 Minn. 176, 80 N. W. 957; Aldritt v. Gillette-Herzog Mnfg. Co. 85 Minn. 206, 88 N. W. 741; 1 Bailey, Personal Inj. (2d ed.) § 38, p. 108. As stated in Herron v. Coolsaet Bros. supra, the most important test of the relation of employer and employe is as to who has the right to direct when and how the work shall be done and who has the right to general control. If this right is in the one paying for the service, he is usually an employer, but if the one doing the work is not, under the terms of his contract, free from the control of the other in respect to the manner in which the details of the work are to be done, he is usually an employe. Each case, however, must be controlled by its own facts. This case is distinguished from the Herron case because of the absence of the right of control which was present in that case, and the facts and circumstances permit different inferences as to the intention of the parties. In the instant case the commission was justified as a matter of law in holding that decedent was not an employe.

Affirmed.