C. B. HASSLEN v. CARLSON & HASSLEN AND ANOTHER.[1]

May 29, 1930.

No. 27,931.

*Murphy & Johanson* and *Carl J. Eastvold,* for relator.

*Mead & Bryngelson,* for respondent partnership and Builders Mutual Casualty Company, its insurer.

[1]Reported in 231 N. W. 188.

474

TAYLOR, C.

The relator made an application under the workmen's compensation law for compensation for the loss of an eye. The industrial commission found as a fact that the injury did not arise out of and in the course of his employment and denied the application. A writ of certiorari brings the case to this court. The question presented is whether the evidence established as a matter of law that the injury arose out of and in the course of the employment.

John Carlson and Carl Hasslen, copartners as Carlson & Hasslen, are contractors and builders and have been engaged in that business for many years. They resided at Ortonville, Minnesota, but took contracts to erect buildings at various points in Minnesota and the Dakotas. In 1928 they were erecting a schoolhouse at Battle Lake, Minnesota, distant 135 miles from Ortonville. In December, 1928, they had ten or more carpenters, including the relator and one Brown, working on this building. The relator is a son of Carl Hasslen, and both he and Brown had been in the employ of the firm as carpenters for some years. They resided at Ortonville and traveled together by automobile from that place to the various points where their work was to be performed. Each had an automobile, and they alternated in furnishing the machine, the relator driving his on one trip and Brown driving his on the next. The relator states that they went home each week-end when their work was within 50 miles of Ortonville, but less often when it was more distant. On the afternoon of Saturday, December 15, 1928, they drove from Battle Lake to Ortonville in Brown's car. On Sunday they started back in the relator's car on a graveled highway. The wheel of a car which they met threw a pebble with such force that it broke their windshield and caused a piece of glass to penetrate the relator's left eye. He was taken to a hospital, but the doctors were unable to save the eye.

The relator states that they had not intended to go home this week-end but to wait until the next and then go home for the Christmas holidays. He states as the reason for making this trip that he was fitting and hanging doors and in order to do the work

properly needed a rabbet plane which he had at home; that he told his father he had some tools at home which he needed to hang doors, and that his father said if he needed them to go home and get them but to be back Monday morning. He further states that he got the plane and also a brace and some bits and was returning with them at the time of the accident. His father gives substantially the same account of the conversation between them. As there is no testimony that this conversation did not take place, he contends that under the rule stated in O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, it conclusively establishes that he was on the business of his employer and within the protection of the compensation act. There are other facts and circumstances shown by the record however which the commission could take into consideration.

No report of the injury was made to the commission or to the insurer until March 18, 1929; and the report then made, while stating that the accident occurred on the road from Ortonville to Battle Lake, did not state the purpose of the trip. Shortly after receiving the report the insurance company had an investigator take the written statement of both the relator and his father. Neither made any mention of the subsequently claimed fact that the relator had gone to Ortonville for tools. In explanation they say they were not asked that question. The investigator testifies that he asked the father if he had sent his son to Ortonville and that the father said he had not. The carpenters furnished their own tools. The employers did not furnish carpenter tools. There were eight or more other carpenters working on the job. The relator states that he made no inquiry to ascertain whether any of them had a rabbet plane. At least one of them had such a plane, for relator's witness Brown had seen him using it. The distance of the round trip to Ortonville was 270 miles. The relator states that he was allowed 80 cents an hour for the time required to make the trip and is corroborated by his father. This would amount to more than the cost of a new rabbet plane. There were three hardware stores at Battle Lake, but no attempt was made to obtain a plane from them. The testimony of the relator in the early part of the case carried the

impression that he went to Ortonville in his own car. Referring to Brown he said: "Well, he went home with me. I asked him if he cared to go home over the week-end, and he said he would go along as company." Toward the close of the case it developed that he rode to Ortonville with Brown in Brown's car.

It is the province of the commission to weigh the evidence and determine the conclusions to be drawn therefrom. Their findings can be disturbed by this court only when manifestly contrary to the evidence or founded on an erroneous view of the law. Engsell v. Northern Motor Co. 174 Minn. 362, 219 N. W. 293, and cases there cited. In view of all the facts and circumstances disclosed by the record and of the improbability that the employer would send a carpenter who was to furnish his own tools on a trip of 270 miles at an expense of 80 cents an hour to get an inexpensive tool needed only occasionally without even inquiring whether any of the other carpenters had one, we are unable to say that the commission was required to find that the relator sustained his injury while on the business of his employer. The evidence made that question a question of fact, and the finding of the commission thereon is final.

Order affirmed and writ discharged.