# WILLIAM RICK v. F. R. NOBLE AND OTHERS.[1]

January 17, 1936.

No. 30,597.

*Lystad & Mantor,* for relators.
*John A. Goldie,* for respondent.

·I. M. OLSEN, JUSTICE.

*Certiorari* by the employer and insurer, relators, to review an order of the referee and order of the industrial commission affirming the findings of fact and allowance of compensation and medical expenses made by the referee to the petitioner, William Rick. One commissioner dissented.

[1]Reported in 264 N. W. 685.

There was a motion by petitioner to dismiss the writ of *certiorari* on the claimed ground that the relators' attorneys had issued certain drafts on the insurer for compensation and expenses of nursing. The insurer refused to honor the draft for compensation. There is nothing in these facts to create estoppel or authorize us to dismiss the proceeding now before us.

The sole question on the merits is whether the evidence justified the referee and commission in holding that the petitioner was, at the time he was injured, an employe of the Noble Realty Company, a partnership. It is claimed that it appears as a matter of law from the evidence that petitioner was an independent contractor and not an employe.

The Noble Realty Company owned a number of buildings in Minneapolis which it maintained and leased to tenants. It also managed other buildings for the owners thereof. One Roberts, an experienced journeyman painter and a member of the painters' union, noticed that the cornice on a three-story building near Harvard street and Washington avenue southeast in Minneapolis, owned by the realty company, needed painting. He went to the office of the company and talked with Mr. Cerney about doing the work. The question of the cost of doing the work came up. Roberts figured that at the union scale of one dollar per hour the work could be done for $90, and gave Cerney that price. Soon afterward it was agreed to start the work. Roberts informed Cerney that two men would be required to do the work, and he was authorized to get a man to assist him. Rick was an experienced journeyman painter. He was introduced to Cerney as the man to assist Roberts, and Cerney was satisfied. Roberts and Rick agreed between themselves that they were to divide the compensation for the work equally between them. Neither Roberts nor Rick was a contractor, and neither had done work as a contractor. They were wage workers. The realty company was to furnish the paint. The workmen were to furnish their own tools, that is, brushes, scrapers, and such ladders and swing stage as they needed. The two men went to work under this arrangement. It seems clear that so far petitioner Rick at least was not an independent contractor. He was a workman

hired by authority of the realty company through Cerney, whose authority is not questioned, to assist Roberts in the work. The fact that his compensation was to be one-half of the total compensation for the work did not make him an independent contractor. The men then worked one day and part of another day. They discovered that the work would take longer than Roberts had figured and that for $90 they could not make wages at the union scale of one dollar per hour. They then went to Mr. Cerney and informed him of the situation, that they could not make their wages of one dollar per hour and would have to quit unless the price for the work was increased $35 so as to come up to the wage scale. After some discussion Cerney agreed to increase the compensation $35 as proposed. Roberts then said he would like to have that put in writing, and Cerney wrote out on the typewriter the instrument referred to as exhibit G, reading as follows:

"Minneapolis, Minn., Oct. 26, 1934.

"In consideration of payments totalling ($125.00) One Hundred Twenty Five Dollars only, payable on Nov. 15, 1934, or after the work (mentioned below) is satisfactorily completed, we: Wm. Rick and H. Roberts agree to scrape, wire-brush, and apply two coats of paint to the entire exterior of all of the metal cornices on the buildings located at 212 Walnut St., 520 Washington Ave., 312 Harvard St., and 318 Harvard St., in Minneapolis. We further agree to scrape, brush, and apply one coat of paint to all of the canopies, or Marquises, on the above buildings. We agree to do the work in a workman-like manner, closing all open seams or joints with Red Lead and nailing firmly, and allowing the first coat to thoroughly dry before applying the second coat. We agree not to apply paint during weather which may be detrimental to the paint job, and to secure approval of the final color from the Noble Realty Co. We agree to supply the necessary tools, ladders, tackles, brushes to complete the job without extra charge. The paint is to be delivered to the premises by Noble Realty Co. as needed."

It was signed by Cerney for the realty company and by petitioner Rick and Mr. Roberts. The two men did some work for a day or

two after that until October 30. At that time Roberts' son had become ill, and Roberts and Rick secured another painter to substitute for Roberts. On the morning of October 31 Rick and the new man were there preparing to go to work. Rick had gone up on the swing stage and accidentally fell therefrom to the ground and was seriously injured.

If we were to consider only the written contract, exhibit G, it might well be that the relation of independent contractors was shown as to Roberts and Rick. When all evidence for petitioner is considered, however, showing that these men were not contractors, never had taken job contracts and were journeyman painters, that they figured their compensation on the union wage scale, although to be paid in a lump sum, which was well understood by Cerney, who acted for the realty company, that the company furnished the material and had full control of what kind and color of paint should be used, and did in fact direct as to what different colors should be used on certain parts of the structure, and did give other directions as to doing the work, the situation is different, and we cannot say as a matter of law that petitioner was an independent contractor, under the terms of the workmen's compensation law.

There are a number of sections of the statute bearing upon the question. The references herein are to sections of 1 Mason Minn. St. 1927, unless otherwise stated.

Section 4326 (d) defines "employer" as follows:

"The term 'employer' as used herein, shall mean every person not excluded by section 8, who employs another to perform a service for hire and to whom the 'employer' directly pays wages, and shall include any person or corporation, co-partnership or association or group thereof, * * *."

The § 8 therein referred to is § 4268 of the statute excluding railway employes, etc.

Section 4326 (g) defines "employe" as follows:

"The terms 'employe' and 'workman' are used interchangeably and have the same meaning throughout this act and shall be construed to mean: * * *

"(2) Every person not excluded by section 8, in service of another under any contract of hire, expressed or implied, oral or written, including aliens, and also including minors who are legally permitted to work under the laws of the state, who, for the purpose of making election of remedy under this act, shall be construed the same, and have the same power of contracting and electing as adult employes."

Section 4290 in some degree defines "contractors." After guarding against fraudulent devices to escape liability, the section reads:

"Provided, however, that no person shall be deemed a contractor or subcontractor, so as to make him liable to pay compensation within the meaning of this section, who performs his work upon the employers' premises and with the employers' tools or appliances and under the employers' directions; nor one who does what is commonly known as 'piece work' or in any way where the system of employment used merely provides a method of fixing the workman's wages."

There is but little dispute as to the facts, and the question presented is, in one respect, a question of law. But we are reviewing the finding of fact made by the referee and industrial commission, that petitioner Rick was an employe of the realty company, hence not an independent contractor. So the question presented here, whether or not we call it a question of law, is whether there is evidence reasonably sufficient to sustain this finding. If reasonable minds could, on the evidence, reach different conclusions on the question, and the referee and majority members of the commission did so reach the conclusion that respondent was an employe, this court must accept their finding. If their finding has reasonable support in the evidence, it is not to be set aside even if the evidence would also sustain a contrary finding. Hasslen v. Carlson & Hasslen, 180 Minn. 473, 231 N. W. 188.

We do not try these cases *de novo* or make findings of fact therein and are limited to the review provided by § 4320 of the statutes. Under that section we determine whether the award or disallowance of compensation was unwarranted by the evidence; in other

words, whether there is evidence reasonably sufficient to sustain the findings and conclusions of the commission. In so doing we review the findings of fact by the referee and commission in the same way as we review findings of a trial court. Kostelec v. A. Guthrie & Co. 161 Minn. 153, 201 N. W. 141.

Numerous cases have been cited by counsel for each party. We shall not attempt an extended review of these cases. This question of independent contractor has been before the court numerous times. The decisions sufficiently disclose that there is not and cannot well be any hard and fast rule adopted to determine whether a person is an employe or an independent contractor. It must depend to a large degree upon the facts in each case. There are cases laying down rules as to particular facts or circumstances in a given case and defining the term "independent contractor" as applied to the facts in those cases.

In Nesseth v. Skelly Oil Co. 176 Minn. 373, 223 N. W. 608, cited for relators, there was a written contract of employment. The employe was designated as "agent," and his compensation was a commission on the commodities sold by him for his principal or employer. The contract was quite specific as to his duties and contained several directions and limitations as to what the agent should or should not do. He agreed to be governed by the employer in fixing prices. The contract contained the provision that the means and manner of performing the terms of the contract were left to the discretion of the agent. This court, in its decision, said [176 Minn. 374]:

"There can no longer be any doubt but what the real test as to whether a person is an independent contractor or an employe is whether the asserted employer, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner and means in which and by which the details of work are to be performed. In the last analysis this test must always determine what was the essential nature of the relationship of the parties."

Further on the court said [176 Minn. 375]:

"The employer, having substantially dictated the duties of an employe by written contract, cannot escape the responsibility of an employer by inserting therein the inconsistent clause, that 'the means and manner of performing the terms of this contract are left to the discretion of the agent.' "

Again the court said [176 Minn. 376]:

"The spirit of the contract is one of 'hire,' and as we have repeatedly held the method of fixing the remuneration is not controlling."

The court in that case also took into consideration the fact that the employer gave directions to and exercised some control over the employe in addition to what was expressed in the contract. In our present case the employer gave specific directions to the employe as to scraping the cornice, nailing up openings, and the color of paint to be used on part of the structure, in addition to the directions contained in the written contract.

In Angell v. White Eagle O. & R. Co. 169 Minn. 183, 210 N. W. 1004, 1006, a somewhat similar case, the court summed up its holding as follows [169 Minn. 187]:

"As we read the contract, Angell & Ness were bound to use the means to accomplish their work which the oil company required them to use. They submitted themselves to the company's control in certain details of the work. They did not undertake to do a specific piece of work for the company. We hold that they were not independent contractors."

It is apparent from the contract in our present case that the employes submitted themselves to the company's control in certain details of the work. They agreed to do certain specific things in carrying out the work and the manner of doing it, and to secure approval of the final color from the company. In respect to details so agreed upon and the approval·mentioned, control remained with the company. In addition thereto, the company had entire control of all material to be used. There was at most a divided control.

The fact that the employe hires others to assist him or furnishes his own tools is not decisive.

Shullo v. Village of Nashwauk, 166 Minn. 186, 207 N. W. 621, cites many of the cases involving the question of independent contractor. There was in that case, under the contract, no specific control by the employer over the employe. It was held that the employe was not an independent contractor.

The writ of *certiorari* is discharged and the orders of the referee and commission awarding compensation are affirmed.

An attorney's fee of $75 is allowed to respondent, which is to be included in the costs to be taxed herein.

JULIUS J. OLSON (dissenting).

The result reached by the majority makes for naught a written contract deliberately entered into by the parties involved. Respondent and his associate Roberts had agreed to do the job for $90. After they had worked a little over a day they thought that this was not enough. Accordingly they increased the contract price to $125, approximately 40 per cent. At the request of Mr. Roberts the written contract here involved was made.

This instrument is free from doubt as to meaning. There is no claim of overreaching, fraud, or mistake. Just why these men wanted a contract in writing does not appear. But it seems to me that there is a fair inference to be drawn therefrom that these men had in mind earning more than the usual hourly wage. If they were to work at one dollar per hour, why limit the total consideration? May it not fairly be assumed that these men had in mind a greater return? And what is there in the law to prevent them from doing so? Why should a working man be deprived of the right of making more than the usual hourly wage?

"The workmen's compensation act [1 Mason Minn. St. 1927, § 4261, *et seq.*, as amended] recognizes that work may still be done under contract, no matter whether it be new construction or repairs." Lange v. American Spawn Co. 194 Minn. 342, 343, 260 N. W. 298.

The only distinction between the cited case and this is that in the cited case both labor and material were to be furnished by Lange. But I can see no distinction otherwise between the cited

case and this. Clearly, if a man owns material that he wishes to use either in new construction or repair work, no legal impediment can be said to exist against a provision in the contract that this material is to be used in the construction or repair. If this distinction is as vital as the majority opinion seems to indicate, it simply means that the owner of a farm cannot have a foundation under his hog house built and provide that the builder is to use sand taken from the farmer's place. This would be true also in the event a man were the owner of a pile of rocks and desired to have same used in beautifying his place, such as the construction of a rock garden. Just why he should be deprived of this right under a contract otherwise fair and free from overreaching is quite beyond me.

These men (Rick and Roberts) were experienced in this line of endeavor. It was clearly within their right to make a contract to render the service that was here required. They could put their own price upon their performance subject only ·to acceptance by the owner of the premises to be improved. That is what was done. Nothing else was contemplated. The manner and means in which and by which the details of the work were to be performed were entirely within the control and determination of Rick and Roberts.

True, they were to use the kind of paint and the color scheme that the realty company desired. But there is no suggestion made that there is any difference in respect of skill required or time employed in putting on the various colors. At any rate, they contracted to do that very thing. Having done so, they should be bound by it.

Let us assume that the realty company had violated its contract in some fashion making it impossible for Rick and Roberts to go forward. What would be the measure of damages? Is it not clear that these "would be measured by the difference between" $125 "and the cost of performance." Lange v. American Spawn Co. 194 Minn. 342, 343, 260 N. W. 298.

In Barker v. Bemidji Wood Products Co. 184 Minn. 366, 238 N. W. 692, the cases upon this subject are discussed. It was there said (184 Minn. 368):

"The case presents the question whether the plaintiff was an employe of the defendant or an independent contractor. No definition of the relationship has been formulated which makes the solution of particular cases free from difficulty. One case may be clearly that of employer and employe; another clearly of independent contractor; and another may be perplexing and uncertain and involve a question of fact."

The facts in the instant case clearly bring it within the second classification.

STONE and LORING, JUSTICES (dissenting).
We concur in the views of Mr. Justice Olson.