SELVIN A. CHRISTOPHERSON v. SECURITY STATE BANK
OF OKLEE AND ANOTHER.

97 N. W. (2d) 649.

July 10, 1959—No. 37,716.

*Tyrrell, Jardine, Logan & O'Brien,* for relators.
*Robert A. Peterson,* for respondent.

KNUTSON, JUSTICE.

Certiorari to review an order of the Industrial Commission awarding compensation to an employee.

Petitioner is the owner and operator of a 160-acre farm located approximately 6 miles from Oklee, Minnesota. He has about 91 acres of this farm under cultivation. When he is not busy with his farming operations he does painting, carpentry, and decorating work in the Oklee area whenever he can obtain work of that nature. He has been so engaged for a period of about 15 years and advertises himself as a painter in the local telephone books. During the month of July 1957, petitioner had a conversation with A. W. Nyquist, vice president of the Oklee bank, and, according to petitioner's testimony, Nyquist told him "that they wanted the bank painted on the exterior and it would be a one coat job and the paint had peeled on the north side and he wanted that removed and repaired and one coat on the exterior, and he said, 'You can do that whenever you have time.'"

Petitioner had previously worked for the bank as a painter. Nothing

was said about the manner or amount of payment for the job, and the time of completion of the work was left to petitioner, with the exception that Nyquist said that they wanted the bank painted before Market Day, a civic celebration which would occur in September. Petitioner was told to obtain the paint at a local place of business and to charge it to the bank.

On August 10, 1957, petitioner and his son began to paint the bank. While the bank had some ladders, they were not long enough for the job and petitioner used his own equipment. He furnished the brushes for himself and his son. During the course of the work it was inspected by Nyquist, and he informed petitioner that there were several places where he wanted the old paint scraped off completely and that in such places petitioner should put on two coats of paint instead of one. Petitioner was also instructed to repair some windows and to paint some chairs in the bank. Nyquist said nothing about hiring petitioner's son but apparently left it to petitioner to procure whatever help he needed.

On the first day on the job, petitioner and his son worked until 7:30 p. m. The next working day was Monday, August 12, and no painting was done on that day because it had rained. The following day, August 13, petitioner and his son returned in the afternoon to scrape paint off the side of the building as they had previously been instructed to do by Nyquist. While petitioner was standing on a plank about 15 feet above the ground, which plank was suspended from some ladders or scaffolds, the ladder broke and petitioner fell to the ground, fracturing both legs and sustaining quite severe injuries. He was unable to continue with the work, so his son procured a Mr. Lindquist to help him and they proceeded with the work. They were never able to finish the job because of wet weather, but they did complete the painting of all except the front side of the bank.

Sometime after the accident, petitioner submitted a bill to the bank in which he included the number of hours he had worked and the number of hours his son had worked. He charged $2 per hour for his own work and $1.50 per hour for his son. The bank sent a check to petitioner for $81, which included the amount due both petitioner and his son for the work they had done. Lindquist later submitted a

bill to the bank for his work, and the bank paid him directly. The bank paid for the paint. None of the checks issued for painting to any of the three who did work on the bank contained deductions for withholding taxes or social security.

The Industrial Commission awarded petitioner compensation on the theory that he was an employee of the bank. The sole question for review here is whether the relationship of employer-employee or that of independent contractor existed under the facts of this case.

The determination of whether an employer-employee relationship or that of independent contractor exists has presented difficulties in many cases. Regarding this difficulty, in an article by Roscoe T. Steffen entitled *Independent Contractor and the Good Life,* 2 U. of Chicago L. Rev. 501, 502, we find the following:

"The difficulty is not so much with the law, which is thus certain enough, as with its application to particular cases * * *. There are too many variables, both in the description of the independent contractor and of his antithesis the servant, to admit of anything approaching automatic application of the law. A contractor may go forth in the morning proud in his independence and return at nightfall a servant, some court having found in the employer such a measure of control of prices, of working conditions, of what not, as no truly independent contractor could countenance."[1]

In a number of prior cases we have attempted to point out some of the tests that can be used in determining which relationship exists. In Lemkuhl v. Clark, 209 Minn. 276, 277, 296 N. W. 28, 29, we said:

"In determining whether the relationship is one of employe or independent contractor, the most important factor is the right of the employer to control the means and manner of performance. Other factors to be considered are mode of payment, furnishing of materials or tools, control of the premises where the work is to be done, and the right of the employer to discharge the employe-contractor."

For additional tests which we have stated, see Moorhead v. Grassle,

---

[1] See, also, *Employee or Independent Contractor?* 26 Miss. L. J. 250.

254 Minn. 103, 93 N. W. (2d) 678; Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. (2d) 646; Fahey v. Terp, 235 Minn. 432, 51 N. W. (2d) 273.

It is the right of control, not the exercise of it, that is of importance. Relators point to the fact that petitioner knew more about painting than Nyquist as some evidence of lack of control. But the mere fact that a workman skilled in a certain type of work knows more about the work than the one who employs him does not determine which relationship exists. A janitor may know how to operate a boiler and the owner of the building know nothing about it, and yet the janitor may be, and usually is, an employee within the meaning of the compensation act. As a matter of fact, it commonly occurs that an employee is hired because he does know more about a certain type of work than his employer. In the very nature of things, there frequently arises a twilight zone in which, in spite of all the tests we may establish, there appears to be some of the incidents of the relationship of employer-employee as well as that of independent contractor. No test or group of tests can be all-inclusive. After all, tests which determine the legal relationship of the parties must be used as guide posts and not as hitching posts. In line with the liberal construction accorded workmen's compensation acts, we should not hold that a relationship exists that will defeat payment of compensation if the evidence will reasonably sustain a determination that a relationship exists which will permit recovery.

In this case, while there was no discussion between the parties of amount or mode of payment, the evidence will reasonably sustain an inference that, inasmuch as petitioner had worked for the bank on previous occasions, there was a tacit understanding as to method and amount of payment and that petitioner was to be paid on an hourly basis for the amount of work he did. While he was left to hire whatever help he needed, we think that an inference is permissible also that the bank left it to him to procure such help and that whoever assisted with the work would also be paid on an hourly basis. In addition to the right to control the work, normally an independent contractor would have a right to finish the job and the obligation would rest upon him to do so with some right of recovery, if there was a breach

of the agreement, either to permit the completion of the job or to finish it. Here, after petitioner was injured, it appears that he was under no obligation to complete the work. His son procured another man to help him, and they proceeded with the work as far as the weather would permit them to do so, but at no time did the bank attempt to hold either petitioner or his son to any responsibility for completing the work or to liability for having failed to complete it. In addition to the above, the bank furnished the paint and paid for it directly. Nyquist testified that he could have discharged petitioner if he had been dissatisfied with the work. While he did not take over complete supervision of the job, he did instruct petitioner from time to time how he wanted the work done and assigned to him additional jobs not directly connected with painting the building.

The case involves largely a question of fact, and it is not substantially different from many other cases of a similar nature where we have upheld the determination of the Industrial Commission that an employer-employee relationship existed.[2] We are convinced that the evidence amply sustains the finding of the Industrial Commission.

Respondent is allowed $250 attorneys' fees.

Affirmed.

---

[2]Gahr v. Strout, 179 Minn. 395, 229 N. W. 340; Cardinal v. Prudential Ins. Co. 186 Minn. 534, 243 N. W. 706; Fuller v. Northern States Power Co. 189 Minn. 134, 248 N. W. 756; Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; Rick v. Noble, 196 Minn. 185, 264 N. W. 685; Larson v. Le Mere, 220 Minn. 25, 18 N. W. (2d) 696; contra, Lemkuhl v. Clark, 209 Minn. 276, 296 N. W. 28.