## JEFFREY FARNAM, BY ANN FARNAM, HIS MOTHER AND NATURAL GUARDIAN, v. LINDEN HILLS CONGREGATIONAL CHURCH AND ANOTHER.

149 N. W. (2d) 689.

February 17, 1967—No. 40,158.

*Gordon Rosenmeier* and *John E. Simonett,* for relators.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne,* and *O. C. Adamson II,* for respondent.

NELSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission affirming a referee's determination that Jeffrey Farnam, employee-respondent, is entitled to compensation for injuries received while employed by employer-relator, Linden Hills Congregational Church. The relators contend that the respondent is not entitled to workmen's compensation benefits because at the time he was injured he was an independent contractor and not an employee; that the employment was not within the usual course

of the trade, business, or occupation of employer; and they object to the compensation benefits awarded and the commission's denial of their petition to join Keith Hegnauer as a party respondent to the proceedings.

It is admitted that the Linden Hills Congregational Church was insured against compensation liability by relator Employer's Mutual Liability Insurance Company of Wisconsin.

There is little dispute, if any, regarding the underlying facts. During the summer of 1963, Keith Hegnauer, then 17 years of age, and Jeffrey Farnam, then 15 years of age, met together to find a way to earn money for their future college educations. They had conferences on the matter during the early part of August that year and decided they would undertake tree trimming throughout their South Minneapolis neighborhood. They soon obtained their first tree-trimming job, which took them 2 days and for which they charged $1.50 an hour, splitting the money earned. They completed two more jobs within the neighborhood, one involving the removal of a tree for which they received $10.

Their third job happened to be next door to the Linden Hills Congregational Church. The pastor, Rev. Stanley Conover, approached Keith about having some tree trimming done on the parsonage grounds which abutted the church property. Keith told Rev. Conover that his purpose in going into tree trimming was to earn college money. When asked whether he had done this kind of work before, Keith answered by saying that he had once when he was 10 years old. They agreed on a charge of $2 an hour for the work, with the total price not to exceed $12. Although Jeffrey Farnam was not present during these negotiations, Keith nevertheless told Rev. Conover that he had a helper and that he would take care of his helper's charge out of the $2 an hour. Keith told Rev. Conover, "If you are worrying about insurance, don't worry * * * because my father * * * works for an insurance company and he saw to it that I have adequate insurance." At the end of the conversation, Rev. Conover said that he would like to talk to the trustees in charge of the buildings and the grounds concerning the tree trimming, but that he could not reach the trustees by telephone before the afternoon of August 16.

Subsequently Keith asked Mrs. Conover if it would be all right if they did the work on a Saturday morning, August 17. There was no objection

and the boys came that morning to trim two dead branches near the rear of the parsonage property which Rev. Conover had specified to them. Keith and Jeffrey had the necessary equipment consisting of lineman's climbing spurs and safety belt, pruning saw, ropes, a station wagon belonging to Jeffrey's mother, a rake, an axe, and a borrowed extension ladder. Unfortunately, while Jeffrey was up in the tree he somehow blacked out and fell 20 to 30 feet to the ground. He was injured in the fall and as a result became a quadriplegic.

The record indicates that the Linden Hills Congregational Church was incorporated under Minnesota law as a religious corporation in 1902. Rev. Stanley Conover had been pastor of the church since 1948. Other employees of the corporation were the organist, choir director, secretary, custodian, and treasurer. The custodian and organist were salaried as was the pastor; the others were paid on an hourly basis for their services. The custodian's responsibility consisted of maintenance and simple repairs of the church property, but this particular custodian had been forbidden to do any climbing because of his age. For convenience, the board of trustees, which has the responsibility for the care of the church property, had furnished Rev. Conover with a $25 petty cash fund for miscellaneous small purchases and to make payment for minor repairs. Rev. Conover felt, however, that he should not spend more than $12 of the petty cash fund for the tree trimming which the boys had agreed to undertake and that is why he told Keith that "if he had not completed the job up to that amount, why, he was to stop at that amount when he felt that he had used up that amount of money."

The statutory authority for the review proceedings of the Industrial Commission is found in Minn. St. 176.471, subd. 1, and permits review by this court by certiorari on grounds that the order of the commission does not conform with the statute; that the commission committed any other error of law; or that its findings of fact and order pursuant thereto are not warranted by the evidence. Of course on review it is the commission's findings and not the referee's that are finally considered. Yureko v. Prospect Foundry Co. 262 Minn. 480, 115 N. W. (2d) 477.

■ We have held that the existence of an employment relationship between two parties is a question of fact and that if reasonable inference

may be drawn either way, the facts found by the commission must stand. Zappa v. Charles Mfg. Co. 260 Minn. 217, 109 N. W. (2d) 420. This court in Elwell v. Fake, 264 Minn. 329, 335, 119 N. W. (2d) 19, 24, states: "Ordinarily whether an employer-employee relationship exists between two parties is a question of fact," citing in support of this statement Turner v. Schumacher Motor Exp. Inc. 230 Minn. 172, 41 N. W. (2d) 182; Darvell v. Paul A. Laurence Co. 239 Minn. 55, 57 N. W. (2d) 831; Ledoux v. Joncas, 163 Minn. 498, 204 N. W. 635; 21 Dunnell, Dig. (3 ed.) § 10395.

■ Darvell v. Paul A. Laurence Co. 239 Minn. 55, 56, 57 N. W. (2d) 831, 832, also holds that "the findings of the commission upon a question of fact must be sustained unless from the evidence and permissible inferences reasonable minds are required to adopt and reach a conclusion contrary to the findings of the commission," citing in support of that rule Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221; Jeffers v. Borgen Chevrolet Co. 199 Minn. 348, 272 N. W. 172; Schoewe v. Winona Paint & Glass Co. 155 Minn. 4, 191 N. W. 1009; State ex rel. Niessen v. District Court, 142 Minn. 335, 172 N. W. 133; Ledoux v. Joncas, 163 Minn. 498, 204 N. W. 635.

We held in Torrey v. Midland Cooperatives, Inc. 253 Minn. 489, 492, 93 N. W. (2d) 135, 137:

"It is the function of this court upon appeal from a decision of the Industrial Commission to determine whether the evidence is such that the commission might reasonably have come to the conclusion which it did. If so, the findings will not be disturbed unless they are manifestly contrary to the evidence or unless consideration of the evidence and inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion."

See, also, Schwerzler v. Frankamp, 255 Minn. 95, 95 N. W. (2d) 503.

■ Minn. St. 176.011, subd. 9, provides:

" 'Employee' means any person who performs service for another for hire; and includes * * * a minor * * *.

* * * * *

"In the event it is difficult to determine the daily wage as herein provided, then the commission may determine the wage upon which the compensation is payable."

The case of Rick v. Noble, 196 Minn. 185, 264 N. W. 685, involved the relation between the parties. The petitioner was employed by relator to paint the cornices and other parts of a building. While he was a skilled journeyman painter, petitioner was not a contractor and had never taken job contracts, though in this instance a written contract for the work was entered into. The relator was to furnish the paint to be used and retained full control as to the kind, quality, and color; he also gave directions during the progress of the work. This court held on appeal that the finding that petitioner was an employee and not an independent contractor was sustained by the evidence. The court, in reaching that conclusion, said (196 Minn. 189, 264 N. W. 687):

"There is but little dispute as to the facts, and the question presented is, in one respect, a question of law. But we are reviewing the finding of fact made by the referee and industrial commission, that petitioner Rick was an employe of the realty company, hence not an independent contractor. So the question presented here, whether or not we call it a question of law, is whether there is evidence reasonably sufficient to sustain this finding. If reasonable minds could, on the evidence, reach different conclusions on the question, and the referee and majority members of the commission did so reach the conclusion that respondent was an employe, this court must accept their finding. *If their finding has reasonable support in the evidence, it is not to be set aside even if the evidence would also sustain a contrary finding.* Hasslen v. Carlson & Hasslen, 180 Minn. 473, 231 N. W. 188.

"We do not try these cases *de novo* or make findings of fact therein and are limited to the review provided by § 4320 of the statutes. Under that section we determine whether the award or disallowance of compensation was unwarranted by the evidence; in other words, whether there is evidence reasonably sufficient to sustain the findings and conclusions of the commission. In so doing we review the findings of fact by the referee and commission in the same way as we review findings of a trial court.

Kostelec v. A. Guthrie & Co. 161 Minn. 153, 201 N. W. 141." (Italics supplied.)

In Anderson v. Armour & Co. 257 Minn. 281, 287, 101 N. W. (2d) 435, 439, we stated:

"We have repeatedly said that it is the policy of this court, in reviewing the findings of the Industrial Commission, not to determine whether on the facts the decision of the commission is correct or even preferable to another, but, rather, only to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts."

■ The most recent statement of this court relating to the test for determining whether one is an employee or an independent contractor is found in Guhlke v. Roberts Truck Lines, 268 Minn. 141, 143, 128 N. W. (2d) 324, 326, where this court said:

"* * * [T]he factors applied in testing the relationship are: (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining whether the status is one of employee or independent contractor, the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance."

Under the decisions in this state, one who works on an hourly basis under an arrangement terminable at will may be an employee even though he works without supervision (Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313), furnishes his own equipment (Bergstrom v. Brehmer, 214 Minn. 326, 8 N. W. [2d] 328), performs work of the kind ordinarily performed by independent contractors (Bolin v. Scheurer, 210 Minn. 15, 297 N. W. 106), or hires a helper (Lynch v. Hutchinson Produce Co. *supra*).

When the facts in the case at bar are measured by the rules established in the foregoing cases, it may be said with some authority that factors appear identifying Jeffrey Farnam and Keith Hegnauer as employees rather than independent contractors. Both Jeffrey and Keith were very much under the control of Rev. Conover. The boys most certainly would

have stopped their work if told to do so and no doubt would have done additional work had he requested it. The facts are not such as to support a claim that the two boys were conducting a distinct business of their own as independent contractors. Further indicators of this conclusion are that the work being done did not require specialized experience or skill, the church controlled the premises, payment was by the hour, and the power of termination was in the trustees of the church.

■ As we see it, there appears to be no question but that contractual relations existed between the boys and Rev. Conover, acting for the church. No hard-and-fast rule has been laid down by which employee-employer or independent contractor status can be determined. As stated by this court in Barker v. Bemidji Wood Products Co. 184 Minn. 366, 368, 238 N. W. 692, 693, 7 W. C. D. 50, 51, "One case may be clearly that of employer and employe; another clearly of independent contractor; and another may be perplexing and uncertain and involve a question of fact."

While a definition has not been attempted applicable to all situations, this court in Lemkuhl v. Clark, 209 Minn. 276, 277, 296 N. W. 28, 29, 11 W. C. D. 397, 398, laid down the following rule as a guide:

"In determining whether the relationship is one of employe or inde-pendent contractor, the most important factor is the right of the employer to control the means and manner of performance. Other factors to be con-sidered are mode of payment, furnishing of materials or tools, control of the premises where the work is to be done, and the right of the employer to discharge the employe-contractor." [1]

---

[1] See, also, Fahey v. Terp, 235 Minn. 432, 51 N. W. (2d) 273, 17 W. C. D. 98; Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N.W. (2d) 646, 20 W.C.D.118; Moorhead v. Grassle, 254 Minn.103, 93 N.W. (2d) 678, 20 W. C. D. 305; Christopherson v. Security State Bank of Oklee, 256 Minn. 191, 97 N. W. (2d) 649, 21 W. C. D. 1; and Nathe v. Franciscan Sisters of the Immaculate Conception, 21 W. C. D. 267, in which the questions of casual employment and usual course of business were involved together with the determination of whether the upkeep of hospital grounds constituted a part of the hospital business. In the Nathe case the commission indicated that it was the right of control and not the exercise of it that was important. The evidence in that case reveals that the chief engineer of the hospital selected

The case at bar narrows down to the question of the right of the trustees to control the work by virtue of their authority to terminate the services of Jeffrey and Keith, and is in line with the holding in Larson v. Le Mere, 220 Minn. 25, 18 N. W. (2d) 696, 13 W. C. D. 366, where this court affirmed the commission's finding that Le Mere was an employee of Kraft Cheese Company based on the right of the company to discontinue Le Mere's services whenever it chose to do so.

This court in Bolin v. Scheurer, 210 Minn. 15, 18, 297 N. W. 106, 107, 11 W. C. D. 477, 479, in reversing the commission's finding of an independent contractor stated:

"* * * About all that their contract contemplated was that Scheurer should continue working until told to quit. This reserved power of discharge assured to Mankato full control over performance."[2]

In Christopherson v. Security State Bank of Oklee, 256 Minn. 191, 97 N. W. (2d) 649, this court held that a farmer and his son who agreed to paint the local bank for $3.50 an hour, furnish their own equipment, and do the work "whenever you have time" were employees of the bank and not independent contractors. This court stated what ought to become the rule in workmen's compensation cases as follows (256 Minn. 194, 97 N. W. [2d] 651):

"* * * No test or group of tests can be all-inclusive. After all, tests which determine the legal relationship of the parties must be used as

---

certain trees to be cut and instructed Nathe to cut the trees into lengths small enough so that he (engineer) and the grounds keeper could remove them without too much difficulty. Since Nathe was somewhat familiar with tree cutting, the engineer did not think it was necessary to supervise the actual cutting of the trees, but his right to do so under the arrangements made did exist. Nathe, a farmer, contracted to cut and trim trees for the hospital at an hourly rate and was so engaged when injured. The commission held on the facts that Nathe in cutting and trimming the trees was an employee of the hospital institution. The commission felt that the upkeep and care of the grounds was as much a part of the hospital's business as would be the maintenance of its buildings and that an admission that a grounds keeper was employed by the hospital in itself proved that the care of the grounds was in reality a part of the hospital's business.

[2] See, Borg v. St. Paul's Lutheran Church, 15 W. C. D. 328.

guide posts and not as hitching posts. In line with the liberal construction accorded workmen's compensation acts, we should not hold that a relationship exists that will defeat payment of compensation if the evidence will reasonably sustain a determination that a relationship exists which will permit recovery."

■ Relators claim that the commission erred in finding that Jeffrey Farnam was employed in the usual course of business by the church. Section 176.041 provides:

"This chapter does not apply to any common carrier by railroad engaged in interstate or foreign commerce, domestic servants, farm laborers, or persons whose employment at the time of the injury is casual, *and* not in the usual course of the trade, business, profession, or occupation of his employer." (Italics supplied.)

It is clear from a reading of the foregoing statute that it excludes employments only if they were both "casual" *and* are likewise not in the course of the employer's trade, business, or occupation. It is conceded that Jeffrey's and Keith's employment was casual, but if such employment is nevertheless within the usual course of the employer's business, it is within the Workmen's Compensation Act. See Altermatt v. Altermatt, 239 Minn. 241, 58 N. W. (2d) 256, where this court held that if employment is within the usual course of employer's business, it is within the Workmen's Compensation Act, even though the employment may be casual. This court held in Amundsen v. Poppe, 227 Minn. 124, 34 N. W. (2d) 337, that to exclude a person from the Workmen's Compensation Act, it must be shown that employment was both casual and not in the usual course of trade, business, etc., and one ground alone is not sufficient. It was held in Chisholm v. Davis, 207 Minn. 614, 292 N. W. 268, that where claimant's employment at time of injury was not casual, claimant was not excluded from benefits of the compensation act, even if the employment was not in the usual course of the employer's business, since the conjunctive "and" used in the exclusionary clause of the act requires concurrence of both grounds of exclusion and, had only one ground been intended to be required, the disjunctive "or" would have been used.

■ Maintenance and repairs of church or hospital edifices and prem-

ises and the keeping of them in presentable condition are generally considered to be the usual course of the business conducted on those premises by the trustees or management thereof. Employees injured while engaged in. washing windows (Carter v. W. J. Dyer & Bro. 186 Minn. 413, 243 N. W. 436), working as a mechanic for a school district (Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. [2d] 646, 20 W. C. D. 118), doing interior decorating (Cardinal v. Prudential Ins. Co. 186 Minn. 534, 243 N. W. 706), roofing (Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. [2d] 797, 17 W. C. D. 5), and tree trimming on hospital grounds (Nathe v. Franciscan Sisters of the Immaculate Conception, 21 W. C. D. 267), have all been held to be in the usual course of business conducted on those premises.

In Borg v. St. Paul's Lutheran Church, 15 W. C. D. 328, 332, the Industrial Commission affirmed the referee's award of compensation to the widow of a carpenter hired to repair a church tower. The commission said:

"* * * As the church was organized primarily for religious purposes, it necessarily must have an edifice in which to carry on such functions. That the building should be kept in reasonably good repair cannot be disputed. * * * While Borg's employment was casual, the evidence requires a finding that it was within the course of the employer's business."

While the Borg case is not controlling on this court, the decision nevertheless reflects the liberal interpretation to be applied in construing the workmen's compensation statutes to afford coverage of all cases reasonably within their purview.

While it may be true, as suggested by respondent, that most people have a certain reluctance to characterize the activities of a church in terms of the market place, it is well to consider that the terms "business" and "occupation" do not necessarily always connote a profit objective. There is nothing in the Minnesota Workmen's Compensation Act which exempts charitable organizations or other employers engaged in activities which are not carried on for pecuniary gain. See, Schneider v. Salvation Army, 217 Minn. 448, 14 N. W. (2d) 467.

In Gardner v. Trustees of Main Street Methodist Episcopal Church, 217 Iowa 1390, 250 N. W. 740, the Iowa court said that it is a matter of common knowledge that church organizations must construct and maintain houses of worship in order to attain their ultimate ends of promoting charitable purposes, spiritual uplift, and saving of souls. In the Gardner case, where a church employee was killed while excavating for a church building, the court held the employee was employed "for the purpose of the employer's trade or business," within the meaning of the Workmen's Compensation Act, even though the church was not conducted for pecuniary gain.

The record in the instant case clearly indicates that Rev. Conover wanted the parsonage property to look presentable for church social functions. In fact, it was an upcoming event that prompted the pastor to engage the boys to remove certain unsightly dead branches from trees in the parsonage yard. Thus, the occasion for the tree trimming was the business of the church itself, and under the circumstances the maintenance of such property, whether it be the adjoining parsonage or the edifice of the church proper, was in the usual course of the business of the church.

The relators argue that the method used to determine Jeffrey Farnam's benefits was erroneous. The commission affirmed the referee's determination that benefits for compensation purposes would be collected as that of an adult journeyman worker in the tree-trimming industry. The legislature has set forth the procedure for dealing with a minor in § 176.101, subd. 7, by providing:

"If any employee entitled to the benefits of this chapter is a minor or is an apprentice of any age and sustains injuries due to an accident arising out of and in the course of employment resulting in permanent total or permanent partial disability, for the purpose of computing the compensation to which he is entitled, the weekly earnings shall be the weekly earnings which such minor or apprentice would probably earn after arriving at legal age or completing the apprenticeship, if uninjured, which probable earnings shall be approximately the average earnings of adult journeymen workers of the same sex below the rank of superin-

tendent or general foremen in the department of the plant or industry *in which the minor or apprentice was employed at the time of injury.*" (Italics supplied.)

It would seem that under this provision the commission's findings were justifiably made and must be held free from error.

Lastly, relators appeal from the denial of their petition to join Keith Hegnauer as a party respondent. The statutory authority for review of the Industrial Commission is found in § 176.471, subd. 1. While none of the specific grounds are applicable to an order refusing to join a party, § 176.471, subd. 9, says, in part, that "[t]he supreme court shall hear and dispose of the matter in accordance with the laws and court rules governing appeals in civil actions." In Chapman v. Dorsey, 230 Minn. 279, 41 N. W. (2d) 438, 16 A.L.R. (2d) 1015, this court held that an order granting or denying joinder of additional parties to an action is nonappealable. As to the writ of certiorari, the court said (230 Minn. 288, 41 N. W. [2d] 443):

"* * * A writ of certiorari does not lie to review an order denying a motion for the joinder of additional parties, in that such order is intermediate in its nature, is decisive of no issue upon the merits or of any part thereof, and is subject to review upon an appeal from a final judgment on the merits."

In the case at bar the Industrial Commission has heretofore issued a decision and an opinion. In Hillerns v. Minnesotan Hotel, 271 Minn. 101, 135 N. W. (2d) 63, this court held that certiorari would not lie to review an order of the Industrial Commission because it is intermediate in nature and is subject to review by certiorari after a final determination by the commission on the merits. Thus, in this particular case, unlike the Hillerns case and Chapman v. Dorsey, *supra,* the issue of failure to join is appealable because there has been a final determination by the commission.

Since the function of this court is to review the findings of fact enunciated by the commission in its decision, this court cannot say upon the record before us that such findings were unwarranted by the evidence. The commission amply discusses the matter in its memorandum and we

think correctly reached its decision. The case at bar involves largely questions of fact. It is not substantially different from any other cases of a similar nature where we have upheld the determination of the Industrial Commission that an employer-employee relationship existed. We are convinced that the evidence amply sustains the finding of the Industrial Commission. Respondent is allowed $250 attorney's fees in this court.

Affirmed.

OTIS, JUSTICE (dissenting).

If, as we hold, the injured minor was an employee of the church and not an independent tree trimmer at the time of the accident, his compensation must be based on what he would probably earn as a church custodian after arriving at legal age and not what his earnings as a tree trimmer would be. Minn. St. 176.101, subd. 7.

ROGOSHESKE, JUSTICE (dissenting).

Although it may make little practical difference in the amount of compensation awarded, I agree with Mr. Justice Otis that Minn. St. 176.101, subd. 7, is improperly applied. The minor's employment relationship to the church is not as a tree trimmer but as a custodial employee engaged in tree trimming.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.